THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOM D. HENRY, Defendant-Appellant.

Third District    No. 81-195

Opinion filed February 26, 1982.

Frederick F. Cohn and Julius Lucius Echeles, both of Chicago, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita K. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Tom Henry was convicted of murder following a bench trial in the Circuit Court of Peoria County and sentenced to 20 years' imprisonment. In his appeal he contends that he was not proved guilty of murder beyond a reasonable doubt, that the court erred in denying his request for an evidentiary hearing on his post-trial motion to suppress evidence, and that the court erred in denying his post-trial motion to reopen the evidence to expand upon testimony presented at trial.

A brief recitation of the facts, as revealed by testimony at the defendant's trial on January 21, 1981, is warranted before addressing the issues raised on appeal. The defendant and the deceased, Lynn Sweeney, lived together in an apartment in Peoria. On Saturday, September 20, 1980, they were observed together attending a karate exhibition. There was no apparent animosity between the two. On Sunday, Sweeney telephoned a friend, John Behrends, and told him that she feared that people from Chicago, with whom Tom had had certain dealings in drugs, were coming down to kill Tom. On Monday, September 22, Mr. Behrends telephoned after work but no one answered at the apartment. That evening, Behrends stopped some policemen and told them of his concern for the well-being of his friend, Lynn Sweeney. Behrends next drove to the apartment where he was met by Officer Mike Flatako of the Peoria Police Department. Behrends and Flatako proceeded through an unlocked security door and into the porchway. From a window, Behrends observed a body lying in the bedroom doorway of the apartment.

Flatako looked in the window when Behrends started crying and observed the body as well. He drew his revolver and checked the door to the apartment. It was unlocked. Upon entering the apartment, Flatako smelled putrefaction. He approached the nude body of Lynn Sweeney, lying in the bedroom doorway, with a gun in her right hand, observed that she was dead and then secured the apartment for the crime investigators.

The Peoria County coroner's physician, Phillip Immesoete, testified that the cause of Sweeney's death was a gunshot wound to the head, just over the left eye. Sweeney appeared to have died about three days prior to the autopsy which was conducted on Wednesday, September 24. The trajectory of the bullet was on a horizontal plane from the front to the back of the skull.

Further testimony established that the gun found at the scene belonged to the defendant. His thumbprint was identified on the gun. The bullet found lodged in Sweeney's skull had been fired from that gun. The fatal shot had been fired at a distance of two to six feet from muzzle to target.

James Swofford, the defendant's cousin, testified that he had discussed the defendant's fear of being killed by the Chicago dealers with him several times during the period just prior to the shooting incident. On September 28, Swafford received a phone call from the defendant. The defendant was crying hysterically and said that Sweeney had died and that he could not go on living without her. He stated that he had tried to commit suicide with an overdose of sleeping pills, but that he had been unsuccessful.

On October 2, 1980, Swofford received another call from the defendant in which they again discussed the defendant's desire to commit suicide. The defendant refused to reveal his whereabouts but stated that he would recontact Swofford when he could get closer to the Peoria vicinity.

Approximately a week later, Swofford received a third telephone call from the defendant. On this occasion, the defendant seemed less upset and was concerned about returning to explain the circumstances surrounding the day of the shooting incident. The defendant related that his life had been threatened by some men from Chicago to whom he owed money. He explained that on the day in question, the defendant and Sweeney were in the bedroom of their apartment when they heard banging on the front door. The defendant said he thought it was the men from Chicago and proceeded to the door with his gun in hand. Sweeney yelled or stated that that was no way to handle things and that they should just act as if they weren't in the apartment. At this point, the defendant turned around and the gun discharged. Apparently the person(s) at the door fled because there was no one there when the defendant opened the

door. The defendant next tried to talk to Sweeney and discovered that she had been killed. He tried to shoot himself as well, but was unable to do so.

About a week after this conversation, the defendant telephoned Swofford again and arranged to meet Swofford in Texas. The two men returned to Illinois together, and ultimately the defendant surrendered himself to the Peoria authorities, whereupon he was immediately placed into custody pursuant to an outstanding warrant for his arrest.

At the close of the evidence, the trial court took the matter under advisement. Six days later, on January 27, 1981, the court announced a verdict of guilty of murder as charged. Prior to the defendant's post-trial hearing, he dismissed his counsel and was thereafter represented by substituted counsel, who continued to represent the defendant on appeal.

We first address the defendant's contention that the trial court erred in denying his request for an evidentiary hearing on his motion to suppress evidence, which motion was presented for the first time after the trial court had returned its verdict of guilty, as aforesaid. The underlying basis for the motion was that Officer Flatako violated the defendant's fourth amendment right to be free from unreasonable search and seizure when he made his warrantless entry into the defendant's apartment. On appeal, the defendant does not deny that he had notice of the grounds for making the motion prior to trial. Rather, he contends, as was argued by present counsel in the trial court, that the decision not to proceed with the motion prior to trial was the result of inadequate investigation and misfeasance on the part of the defendant's trial attorney.

Failure of counsel to file a motion to suppress evidence is not *per se* incompetence. (*People v. Ruple* (1980), 82 Ill. App. 3d 781, 787, 403 N.E.2d 129, 133-34, quoting *People v. Mitchell* (1979), 78 Ill. App. 3d 851, 853-54, 397 N.E.2d 569, 570-71.) "[T]o successfully establish incompetence of counsel, [the] defendant must demonstrate actual incompetence, as manifested in the performance of his duties as trial attorney, which resulted in substantial prejudice to the defendant without which the outcome would probably have been different." (*People v. Ferguson* (1981), 99 Ill. App. 3d 779, 785, 425 N.E.2d 582, citing *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Although not raised in defendant's post-trial motion, the defendant nonetheless presented testimony at the hearing on the post-trial motion to suppress as an "offer of proof" to support his oral argument that the defendant was deprived of effective assistance of trial counsel.

■■ We have reviewed the record on appeal, including the offer of proof, and find that the record viewed in its entirety fails to disclose that the defendant's trial counsel was incompetent. Whether the defendant's motion to suppress, if filed timely, would have been successful or not is not so clear as to admit of only the conclusion that the motion would have been

successful. We do not pass judgment on the merits of the defendant's motion. Nor do we hold that the defendant's counsel might not have been better advised to pursue a timely notice to suppress based on the facts before us. We hold merely that, based on the totality of defense counsel's conduct at trial, the defendant was not denied his right to effective assistance of counsel.

■■ We also hold that the trial court did not abuse its discretion when it rejected as untimely the defendant's post-trial motion to suppress. The timeliness of motions to suppress is determined by statute. (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(c).) Specifically, that section states as follows: "The motion shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." Having found that the defendant was not deprived of effective assistance of counsel and that there was no problem of notice to the defendant of grounds for suppression prior to trial, we hold that the trial court proceeded properly in enforcing the statutory mandate and rejecting the defendant's motion, advanced for the first time at post-trial proceedings. See *People v. Foster* (1979), 76 Ill. 2d 365, 382-83, 392 N.E.2d 6, 13-14.

Another of defendant's contentions on appeal concerns the sufficiency of the State's evidence. Specifically, the defendant argues that the evidence fails to establish beyond a reasonable doubt that the defendant acted with the mental state for murder, inasmuch as the State's evidence fails to establish a motive for the killing, and the physical evidence does not exclude a less culpable mental state.

From the testimony of the defendant's cousin, James Swofford, it appears that at trial the defendant's theory of the shooting incident was that he accidentally shot Lynn Sweeney and that, at most, he could stand convicted only of involuntary manslaughter. In closing argument, however, defense counsel chose to disclaim as a defense that a conviction of involuntary manslaughter could obtain, and urged only that the court acquit the defendant on the theory that the State's evidence had failed to prove beyond a reasonable doubt that the defendant had murdered Sweeney. On appeal, assisted by new counsel, the defendant again suggests that the State's evidence supports, at most, a conviction of involuntary manslaughter. In any event, the crux of the defendant's arguments, both in the trial court and on appeal, is that the State failed to meet its burden of proof with respect to the defendant's mental state. For the reasons hereinafter stated, we disagree.

Initially, we dispose of the defendant's lack-of-motive argument by noting simply that it is uncontroverted that in Illinois the State is not obliged to prove motive to obtain a conviction of murder. *People v. Wilson* (1948), 401 Ill. 68, 74, 81 N.E.2d 485, 489.

■■ Furthermore, while it is true that the State's evidence of the defend-

ant's mental state at the time of the shooting was entirely circumstantial, this fact standing alone is insufficient to require reversal of the trial court's judgment. A review of the State's evidence clearly supports a reasonable inference that the defendant's act was performed with the knowledge that such act created a strong probability of death or great bodily harm to the victim. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2).) Specifically, the State established that the bullet entered the victims' head just above the eye. The victim's height, 5'6", placed the level of her forehead approximately at the height of the shoulder of the defendant, who stood 5'11" tall. The trajectory of the bullet was on a horizontal plane, and it was fired at close range, as evidenced by power burns on the victim's body. The effect of this evidence supports the State's theory that the defendant deliberately took aim at the victim before firing the fatal shot. Moreover, this evidence is inconsistent with the defendant's theory that the gun was discharged accidentally. (*Cf. People.v. Calhoun* (1972), 4 Ill. App. 3d 683, 281 N.E.2d 363.) The State's evidence further established that after the shooting the murder weapon had been placed in the victim's hand in an apparent attempt to make it appear that the deceased had committed suicide. The purposeful performance of such an act is probative of the requisite mental state for murder and inconsistent with the defendant's theory of innocence. Evidence of the defendant's flight and attempted suicide is also supportive of the State's theory, in that such evidence suggests that the defendant was conscious of his guilt. (*People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319.) We do not hesitate to conclude that the evidence of record amply supports the trial court's finding of fact that the defendant shot the victim with the requisite mental state for a conviction of murder.

■■ Finally, the defendant asks that this court reverse his conviction on grounds that the trial court erred in denying his post-trial motion to reopen the evidence. Specifically, the defendant offered to introduce a chart demonstrating the size and spatial relationship of the apartment where the shooting took place and additional testimony from two of the witnesses who had been called by the State during the defendant's trial. The decision whether or not to grant the defendant's motion to reopen the evidence for further testimony and physical evidence is a matter that rests within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 561, 366 N.E.2d 914, 923, citing *People v. Siciliano* (1954), 4 Ill. 2d 581, 123 N.E.2d 725, *cert. denied* (1955), 349 U.S. 931, 99 L. Ed. 1261, 75 S. Ct. 774; *People v. Kelly* (1941), 378 Ill. 273, 38 N.E.2d 9.) The defendant in the instant case had ample opportunity at trial to elicit the additional testimony from the two witnesses during counsel's cross-examination of them and to introduce a chart to more clearly define the size and spatial relationships of the apartment. The defendant cannot seriously contend

that the additional evidence was newly discovered. At best, the offered evidence is merely cumulative in that it would have provided further explanation and detail to testimony already elicited. On these facts, and given our finding that the trial counsel was not incompetent, it was clearly within the trial court's discretion to deny the defendant's motion. We conclude that no error was committed. Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.