THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CRAIG A. JOSE, Defendant-Appellee.

Fifth District   No. 5—91—0800

Opinion filed February 11, 1993.

Paul H. Hillis, Jr., State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

David M. Foreman, of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal is a consolidation of two criminal cases brought against the defendant, Craig S. Jose, one in Marion County and one in Clinton County. The State brings the appeal from orders granting defendant's motions to suppress evidence.

The defendant was charged in Marion County on June 4, 1991, with the offense of unlawful production of Cannabis sativa plants. He was charged in Clinton County on May 22, 1991, with the offense of unlawful possession of Cannabis sativa plants. Both prosecutions arose out of a single arrest of defendant while in possession of marijuana in Clinton County; defendant thereupon consented to a search of his home, located in Marion County, where it was found that he was growing marijuana. Defendant filed motions to suppress evidence in both counties. The motion to suppress was heard first in Marion County and granted. Subsequently, the circuit court of Clinton County granted defendant's motion to suppress, based on principles of collat-

eral estoppel and *res judicata*, the matter having been already litigated in Marion County. For reasons which follow, we affirm the suppression orders of the circuit courts of Marion and Clinton Counties.

We will present the facts and issues with respect to the Marion County order first. Defendant was charged by information filed June 4, 1991, with the offense of unlawful production of Cannabis sativa plants in that, on May 22, 1991, defendant knowingly and unlawfully produced more than 50 Cannabis sativa plants at his residence in Marion County, Illinois. On June 26, 1991, defendant filed a motion to suppress evidence for the reason that a search of defendant's vehicle was made without probable cause or consent of defendant, at a time when defendant was not under arrest. Incriminating evidence was obtained as a result of this illegal search, including a written statement of defendant and evidence found in a subsequent search of defendant's home.

A hearing, which was combined with the preliminary hearing, was held on the motion on July 22, 1991. Michael S. Dall, a Clinton County deputy sheriff, testified that in the early morning of April 22, 1991, he had occasion to make a traffic stop of defendant's vehicle in Clinton County. The vehicle had no rear license plate light, and Dall suspected that the driver was intoxicated.

Immediately upon being stopped, defendant exited his vehicle through the passenger side door and approached Dall. Dall requested defendant to remain by his squad car, and Dall approached defendant's vehicle, looking inside with a flashlight. Dall observed in the back seat two brown paper bags or grocery sacks, one of which had an opening in it. Dall could see inside the bag with his flashlight. Dall observed inside the bag the top of what appeared to be Cannabis sativa plants. Through his training and experience, Dall is able to recognize and identify cannabis plants. Dall returned to defendant and placed him under arrest. Upon frisk searching defendant, Dall found on his person a wooden "one-hitter" box used for smoking cannabis. It had some green plant material in it. Also found on defendant's person was a silver-colored box containing pills. Dall then returned to defendant's car, removed the paper sacks and found several cannabis plants in both bags. Dall returned to defendant and advised him of his constitutional rights pursuant to *Miranda*. Dall asked defendant if he had any other cannabis plants in the area or at his residence. Defendant responded affirmatively to both questions. Dall then called for assistance.

Captain Hummert and Sergeant Kreke of the Clinton County sheriff's department arrived on the scene. While waiting for them,

Dall inventoried defendant's vehicle and requested a tow truck. When Kreke arrived, he asked defendant to consent to a search of his residence. Defendant consented, and the officers proceeded to his home and conducted a search. Recovered from defendant's vehicle were 29 cannabis plants. At all times, defendant was cooperative and did not appear to be under the influence of alcohol or drugs. Defendant appeared to understand everything that was said to him. No force, threat or coercion was applied against him.

Defendant's residence is located in Marion County. Found in the home were 90 cannabis plants under a "Gro light." All of the cannabis plants seized from the vehicle and residence were held in the evidence room at the Clinton County sheriff's office. One of the plants found at the residence was 18 to 24 inches tall; the rest were 8 to 12 inches tall. They were all in pots.

On cross-examination, the first question asked of Dall was whether he had brought the grocery sacks taken from defendant's vehicle with him to court. Dall responded that he had not. Dall testified that there was a slit open in the top of the sack through which he could see. The top of the plant was inside the sack but parallel with the top of the bag. The sacks were stapled shut. When Dall initially looked inside defendant's vehicle, defendant was not under arrest. Dall did not reach or lean inside the vehicle until after defendant was placed under arrest. When Dall initially looked inside the vehicle, he was looking down, and the top of the sack was probably three to four feet from his head. His flashlight is very strong.

On redirect examination, Dall testified that the bag was nearly within arm's reach when he initially looked inside defendant's vehicle with his flashlight. The bags were haphazardly stapled across the tops. The tops of the bags were not folded over in any way. When Dall opened the bags following defendant's arrest, he just popped them open.

The State's next witness was James Hummert, a Clinton County deputy sheriff. He assisted Dall in the arrest of defendant and search of defendant's residence. His testimony was substantially consistent with Dall's.

Mike Kreke of the Clinton County sheriff's department testified that he also assisted Dall in the arrest of defendant and search of defendant's residence. His testimony was consistent with that of Dall and Hummert. Kreke is in charge of the evidence room at the Clinton County sheriff's department and accordingly took custody of the evidence seized from defendant. He described the bags taken from defendant's vehicle as ordinary grocery bags. Kreke took a written

statement from defendant in which defendant stated that the cannabis plants belonged to him, that he used them only for his personal consumption and that his wife and daughter had nothing to do with them. Defendant had been advised of his *Miranda* rights and agreed to waive them. The State rested.

Defendant testified in his own behalf. He is 36 years of age and is employed as an assistant manager at Domino's Pizza. Defendant worked the evening of May 21, 1991, from 4:30 to 12:30. Prior to going to work, he placed two brown paper sacks in his car on the back floorboard against the back of the front seat. One sack was on the passenger side and one was on the driver's side. Inside the sacks were peat pots with cannabis plants in them. Because the sacks were going to be sitting in his car while he was at work, defendant stapled them shut so no one could see in them. He pinched the sacks shut and put staples across the top of them.

It was after defendant got off work at 12:30 that he was arrested. Defendant testified that, after exiting his vehicle and giving Dall his driver's license, Dall approached defendant's vehicle. The driver's side window was down on the front door. Defendant testified that "[i]t looked like [Dall] pushed the seat towards the front and bent over into my car." The top portion of Dall's body was inside defendant's car. Dall then turned around and stated that defendant had marijuana in his car. Dall had his head inside the car for 30 seconds or more. Defendant could not see where Dall's hands were during this time. Defendant consented to the search of his home and made incriminating statements because he had never been arrested before and he was scared.

On cross-examination, defendant testified that Dall reached inside defendant's vehicle with his flashlight. Defendant explained how he stapled the bags shut. He tried to fold in the creases on the ends of the bags and then he pinched them together and stapled them across the top. He did not fold the tops of the bags over. He put 10 to 12 staples in each bag. The tops of the bags were not full. There was a total of 13 two-inch peat pots containing 29 plants. The defendant rested.

At this point, the State asked for a continuance to obtain a rebuttal witness who was not available at that time. Defendant did not object to a continuance, and the motion was granted. Defense counsel then indicated that there was a question he had forgotten to ask the defendant in testimony, and counsel asked permission to recall defendant to the stand. The State did not object and defendant was recalled to the stand. He testified that when he got off work and went to his

car, he looked at the sacks in the back and double-checked to make sure nobody could see in them. Defendant could not see inside the sacks. He opened the door prior to looking, and the car was illuminated by the interior light. The cause was recessed.

Hearing on defendant's motion to suppress was resumed on July 30, 1991. Todd A. Hintz, a Clinton County deputy sheriff, testified in rebuttal for the State that on May 22, 1991, he was riding with Deputy Dall when defendant was stopped and arrested. Defendant was stopped because his vehicle had no rear license plate light and he appeared to be intoxicated. Defendant's vehicle had driven off the shoulder numerous times and was weaving. Immediately after being stopped, defendant exited his vehicle on the passenger side. Defendant explained that the driver side door was broken. Hintz remained with defendant near the squad car while Dall approached defendant's vehicle. Defendant was not yet under arrest. He was not under the influence of alcohol. After looking into defendant's vehicle, Dall returned to the squad car and advised defendant that he was under arrest. Dall then returned to defendant's vehicle and retrieved the two brown grocery bags. The bags were partially stapled shut. The middle part of the bag was stapled shut with a few staples and one could see inside the ends of the bag.

On cross-examination, Hintz testified that both bags were stapled in the middle and one could see in the opened ends of both bags. However, one bag could be seen into more easily than the other. Hintz did not think Dall went inside the vehicle at all on his initial approach to defendant's vehicle. At most, Dall's head may have slightly entered the car, but his flashlight was outside the car. Hintz did not observe Dall continuously as he was also watching the defendant. This concluded the evidence.

The State presented argument. Defendant then presented argument and therein conceded that defendant was lawfully stopped by Deputy Dall and that Dall had the right to shine his flashlight into defendant's vehicle to observe what was in plain view. However, defendant argued that the evidence also indicated that Dall opened one of the closed bags slightly and that, because Hintz's testimony regarding the closure of the bags differed so drastically from that of Dall, Dall's credibility was in question. Defendant argued that the State had not met its burden of establishing that the search was lawful.

The court indicated that it was going to take the matter under advisement and granted leave to the parties to submit additional authority if desired. The court stated:

"[I am] somewhat concerned by the State's or the defendant's failure to require the production of these bags. It seems to me that there should be some physical manifestation of the manner in which these bags were stapled and that the best evidence as to how they were stapled is not before the Court and the failure to produce that, at this point I am not sure on whom if anybody on either side that failure to produce may impact. At any rate, I am quite concerned if there is a question about how these bags were stapled you should be able to look at the bags and determine that."

The State then made a motion to supplement the record with the paper bags and indicated that, if defendant required foundation, it could produce a witness. The court stated that the evidence was closed at this point, but that if counsel could agree on some way to present the bags to the court, the court would consider them. However, the court would not permit additional evidence over defendant's objection. The court stated that the evidence was closed, and in the absence of a written motion to reopen the evidence, the court would make its ruling on the evidence before it.

No written motion to reopen the evidence was filed, and on September 6, 1991, the court entered a written order on defendant's motion to suppress evidence. The order found that defendant had standing to bring the motion; that the search was without a warrant and therefore presumptively unreasonable; that the initial stop of defendant for a traffic violation was lawful; that if Dall visually inspected the inside of defendant's vehicle and could see through an opening in one of the sacks, as Dall testified, the subsequent search was lawful, but if Dall reached into the vehicle and opened the bags to see in them, as defendant testified, it was an illegal search conducted without probable cause; that the grocery sacks were not offered into evidence; that the credibility issue as to whether the officer could have observed what was inside the bags without opening them was resolved in favor of defendant; and that the State had failed to sustain its burden of proof that the search and seizure was lawful. Accordingly, the defendant's motion to suppress all evidence and statements obtained as a result of the illegal search was granted.

On October 2, 1991, the State filed a motion to reconsider or in the alternative to reopen the evidence on the court's suppression order. The motion sought to reopen the evidence to introduce into evidence the grocery bags in question. At the hearing on the motion, held October 29, 1991, the State made an offer of proof of the evidence it would present should its motion to reopen the evidence be

granted. Deputy Dall testified to the identification of the grocery bags in question and their chain of custody. Dall testified that when he initially observed the bags they were stapled shut. Dall pulled them open. At the time of hearing, the plants inside the bags had died and had wilted over so that they were not as tall as at the time the bags were initially seized. At the time the bags were initially opened, the plants were all in an upright position. Dall demonstrated for the court the manner in which the bags had been stapled shut when initially seen. Dall held each end of the bag at approximately two inches from the end and used his left index finger to hold the center closed. This left gaps in the open ends of the bag. The original staple holes were still visible in the bag.

On cross-examination, Dall testified that the bags had been in the custody of the Clinton County sheriff's department since they were originally seized. Dall had no reason to believe that the bags were not available to be produced at the hearing on defendant's motion to suppress.

Deputy Kreke testified that, as evidence custodian for the Clinton County sheriff's department, he received the bags in question from Deputy Dall. He secured the bags in the department evidence room. The bags are in substantially the same condition as when Kreke received them.

On cross-examination, Kreke testified that the bags have been continuously in the possession of the Clinton County sheriff's department since they were initially seized. They have at all times been available to be produced in court. This concluded the offer of proof.

Defendant objected to the motion to reopen evidence. The State argued that, although it would have been possible for it to introduce the bags into evidence at the initial hearing on the motion to suppress, its failure to do so was not an attempt to conceal evidence. It was in the best interest of justice for the court to decide the motion based on all the evidence, and if the court considered this physical evidence, its ruling might well be different. However, the State acknowledged that whether to reopen the evidence was a decision within the sound discretion of the court.

Defendant argued that the State should not be allowed to withhold important evidence until the defendant has concluded his case and then seek to present that evidence. The State had presented no reason why it had failed to produce the bags at the original hearing on the motion to suppress. In the instant case, the State waited for an adverse ruling before seeking to present the bags to the court.

The State responded that defendant could not claim surprise over the grocery bags as his counsel had examined them prior to the hearing on the motion to suppress. The State also acknowledged that its failure to produce the bags at hearing was mere oversight. The State asked that the court consider and examine the bags to determine if Deputy Dall's testimony was consistent with the physical evidence for purposes of assessing his credibility.

The court found that it would have been preferable to have had the physical evidence before it prior to its ruling on the motion. The court acknowledged that had the physical evidence corroborated Dall's testimony at the hearing, the court's ruling might have been different. However, the court also pointed out that the hearing had been continued over two dates. The court stated:

> "[T]here are other proceedings involved in this matter that turned, at least in part, on my ruling, and I believe that if I were to grant this Motion To Re-open, and if I were then thereafter to permit the bags to be introduced into evidence, in the interest of fairness and justice, I would probably have to set aside everything aside [sic], go back to square one and start the whole hearing over. I'm not going to do that."

The court found that the Sate had been given ample opportunity to introduce the evidence and denied the motion to reopen the evidence. The court further acknowledged that it had decided the credibility issue in part based upon the State's failure to produce the bags. The failure to produce the bags was held against the State. The court made no finding as to whether the bags would have corroborated Deputy Dall's testimony or the testimony of the defendant.

The State argues on appeal that the trial court abused its discretion in denying its motion to reopen the evidence to present physical evidence on the issue of whether Deputy Dall could have seen cannabis plants in the defendant's vehicle by visual inspection alone. The decision whether to grant a motion to reopen a case for further evidence is within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of that discretion. The burden is on the party seeking to reopen the case to show sufficient reason therefor. (*People v. Shore* (1984), 129 Ill. App. 3d 443, 458, 472 N.E.2d 512, 521-22.) While the court has discretion to reopen the evidence in the interest of fairness and justice, the integrity of the judicial system demands that such discretion be exercised only where necessary. *People v. Housby* (1975), 26 Ill. App. 3d 92, 98, 324 N.E.2d 465, 468.

■■■ We find no abuse of discretion in the trial court's denial of the State's motion to reopen the evidence in the instant case where the State did not seek to reopen the evidence until after receiving an adverse ruling, the evidence sought to be admitted was not newly discovered and had been available at the original hearing, and the State presented no reason for its failure to present the evidence at the original hearing other than its own "oversight" or lack of diligence. It has been held that where a defendant fails to exercise due diligence to obtain the testimony of a witness, the court may properly refuse to permit reopening of the case for that testimony. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 561, 366 N.E.2d 914, 923.) We see no reason why the same rule should not apply to the State.

We think the instant case is similar to *People v. Henry* (1982), 103 Ill. App. 3d 1143, 1148-49, 432 N.E.2d 359, 362-63, in which the defendant filed a post-trial motion to reopen the evidence so that he could introduce a chart demonstrating the size and spatial relationship of the apartment where the offense allegedly was committed and present additional testimony from two of the State's witnesses. The appellate court affirmed the trial court's denial of the motion, pointing out that the defendant had had ample opportunity at trial to elicit the additional testimony from the two witnesses during his cross-examination of them and to introduce the chart. The additional evidence which defendant sought to introduce was clearly not newly discovered. Furthermore, the appellate court found, the evidence was merely cumulative in that it would have provided further explanation and detail to testimony already elicited.

Similarly, in the instant case, the State had ample opportunity to introduce the grocery sacks into evidence. At the initial hearing on defendant's motion to suppress, the first question asked of the State's main witness, Deputy Dall, was whether he had brought the grocery sacks to court. The State's case in chief was not concluded that day but was continued for several days so that the State could present its final witness. Even on the second day of the hearing, the State failed to produce the grocery sacks. At the conclusion of the hearing on the motion to suppress, the court advised the State that it would consider a written motion to reopen the evidence to introduce the grocery sacks and expressed its desire to have those sacks in evidence. The State still did not file a motion to reopen the evidence until after the court entered its written order on the motion to suppress. The State does not direct us to any case in which a motion to reopen the evidence was allowed after verdict or entry of judgment.

Furthermore, the grocery sacks were not newly discovered evidence but had been in the custody of the State since the defendant's arrest. Deputy Kreke, the evidence custodian for the Clinton County sheriff's department, testified that the sacks were available to the State on the date of the hearing. The State offered no explanation for its failure to produce the sacks or its failure to file a motion to reopen the evidence prior to entry of the order, other than oversight and lack of diligence.

We think that, in entering its order granting defendant's motion to suppress, the trial court drew a reasonable inference from the State's failure to produce the sacks that the sacks would not have corroborated Dall's testimony, thus damaging Dall's credibility. This is not a case where the State was improperly denied the right to present evidence answering or contradicting new affirmative matter raised by defendant. We do not think the State can, through neglect or lack of diligence, fail to produce evidence which it contends supports its case and then, after receiving an adverse ruling, seek to introduce that evidence and have the court reconsider its ruling.

■ The State argues that the trial court's comments indicate that it was under the mistaken impression that, should it grant the State's motion to reopen the evidence, it would have to "go back to square one" and conduct a full retrial of the motion to suppress. We do not read the trial court's comments in this way. We believe that the trial court simply meant that, in the interest of fairness and justice, the defendant would have to be accorded an opportunity to rebut the additional evidence, and any proceedings following, and dependent upon, the entry of the suppression order would have been nullified. The court was aware of the Clinton County proceeding, the result of which turned on the result reached by the Marion County court. The trial court's exercise of its discretion was not clouded by a mistaken belief that an entirely new hearing on the motion to suppress would be required.

■ Because we find that the trial court did not abuse its discretion in denying the State's motion to reopen the evidence, and because the State does not otherwise challenge the suppression order, we affirm the order of the circuit court of Marion County granting defendant's motion to suppress evidence.

■ We turn now to the Clinton County proceeding. Defendant was charged by information filed May 22, 1991, with the offense of unlawful possession of Cannabis sativa plants. Defendant filed his motion to suppress evidence on August 28, 1991, alleging that the search was conducted without consent or probable cause and prior to defend-

ant's arrest. On September 18, 1991, the parties appeared before the court, and defendant made an oral motion that the court grant his motion to suppress for the reason that it was bound by the order of the Marion County circuit court. On September 25, 1991, the circuit court of Clinton County entered its order granting defendant's motion to suppress evidence for the reason that the ultimate issue of fact had been thoroughly and completely litigated in the Marion County proceeding, that there existed neither additional evidence nor peculiar circumstances to warrant further hearing, and therefore principles of *res judicata* and collateral estoppel applied to bar further litigation of the issue. On October 23, 1991, the State filed a motion to reconsider the court's ruling alleging that a motion to reconsider was pending in Marion County and that the State had new and additional evidence to present which had not yet been presented to the Marion County court. A hearing was held on this motion on December 6, 1991. At the time of this hearing, the motion to reconsider filed in Marion County had been denied, and the Clinton County court was so advised. The motion to reconsider filed in Clinton County was denied.

The State concedes in its oral argument before this court that if we affirm the order of the circuit court of Marion County suppressing the evidence, the Clinton County order is correct in that any further litigation of the issue is barred by collateral estoppel. We agree. Accordingly, we affirm the order of the circuit court of Clinton County granting defendant's motion to suppress evidence.

For the foregoing reasons, the orders of the circuit court of Marion County and the circuit court of Clinton County granting defendant's motions to suppress evidence are affirmed.

Affirmed.

CHAPMAN, P.J., and LEWIS, J., concur.