No. 2--06--1071      Filed:  5-1-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Nos.  06--CF--69         06--DT--57 |
| BRENT E. MARKER, | ) ) | Honorable James M. Wilson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Following a traffic stop by an Oswego police officer, defendant was arrested and charged with driving under the influence of drugs (625 ILCS 5/11--501(a)(6) (West 2006)) and driving under the combined influence of drugs and alcohol (625 ILCS 5/11--501(a)(5) (West 2006)) (DUI) in case number 06--DT--57.  As a result of the same arrest, defendant was also charged with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(A) (West 2006)) and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2006)) in case number 06--CF--69.  Defendant filed a motion to quash his arrest and suppress evidence, and the trial court granted the motion on August 11, 2006.  On September 7, 2006, the State moved to reconsider the trial court's ruling.  The trial court denied the motion to reconsider on September 28, 2006, and on October 23, 2006, the State filed a certificate of impairment (see People v. Young, 82

Ill. 2d 234 (1980)) and a notice of appeal. We conclude that the State's notice of appeal was not timely and we therefore dismiss the State's appeal.

On July 11, 2007, defendant filed a motion to dismiss this appeal for lack of jurisdiction. The State responded to the motion on July 19, 2007. At that time, the State's reply brief was not yet due and no panel of this court had been assigned to decide the appeal. A panel of this court hearing motions denied the motion to dismiss on August 1, 2007, and shortly thereafter the appeal was assigned to a different panel of this court for disposition. Defendant later filed a "Motion to Submit Jurisdictional Motion With Issues Addressed in the Briefs and Arguments." Defendant asks us to again consider our jurisdiction, despite the earlier denial of his motion to dismiss. The motion is allowed. The motion panel's ruling does not foreclose us from revisiting the question of jurisdiction. In re Marriage of Waddick, 373 Ill. App. 3d 703, 705 (2007). Indeed, "[a]lthough the motion panel denied the motion to dismiss, this panel has an independent duty to determine whether we have jurisdiction and to dismiss an appeal if we do not." Waddick, 373 Ill. App. 3d at 705.

In his motion to dismiss, defendant argues, inter alia, that the State had only 30 days to file its notice of appeal after the trial court granted the motion to quash and suppress on August 11, 2006, and that its motion to reconsider the trial court's ruling did not extend the period for filing the notice of appeal. Defendant forthrightly acknowledges that his argument is contrary to a number of decisions from other districts of the appellate court, but he urges us to take a fresh look at the issue. Defendant directs our attention to six decisions: People v. Van Matre, 164 Ill. App. 3d 201 (1988), People v. Rimmer, 132 Ill. App. 3d 107 (1985), People v. McBride, 114 Ill. App. 3d 75 (1983), People v. Clark, 80 Ill. App. 3d 46 (1979), People v. Stokes, 49 Ill. App. 3d 296 (1977), and People v. Robins, 33 Ill. App. 3d 634 (1975).

Two of the cases defendant cited--McBride and Clark-- have little or no bearing on the issue before us. The question in Clark was whether the defendant's notice of appeal was timely where it was filed within 30 days following entry of an order: (1) denying the defendant's motion to reconsider the denial of his motion to dismiss and (2) reinstating a previously vacated guilty plea and sentence. McBride stands for the proposition that the State may move for reconsideration of a suppression order prior to filing a notice of appeal. McBride, 114 Ill. App. 3d at 80. However, appellate jurisdiction was not at issue in McBride, and the court did not address the question of whether a motion to reconsider would extend the time for bringing an appeal. A third decision, Robins, does not address the precise jurisdictional issue in this case: whether a motion by the State to reconsider a suppression ruling tolls the time for filing a notice of appeal. However, because cases addressing that issue have relied (either directly or indirectly) on Robins, it is necessary to consider it here.

Moreover, we are aware of two cases not cited by defendant--People v. Smith, 232 Ill. App. 3d 121 (1992), and People v. Burks, 355 Ill. App. 3d 750 (2004)--that also stand for the proposition that a motion to reconsider an order suppressing evidence tolls the time for taking an appeal from that order. Thus, we have six decisions to examine, five of which involve precisely the same issue now before us. We begin with Stokes. In that case (as in the present one), the trial court granted the defendant's motion to quash and suppress, and the State filed a notice of appeal within 30 days of the denial of its motion to reconsider, but more than 30 days after the ruling granting the motion to quash and suppress. The Stokes court noted that the trial court retains the power to modify or vacate its judgment for a period of 30 days and that the State may appeal any order that has the substantive effect of suppressing evidence. Stokes, 49 Ill. App. 3d at 298. Ultimately, however, Stokes relied on Robins in holding that the motion to reconsider extended the time for the State to

file its notice of appeal. Unlike Stokes, Robins did not involve review of a suppression ruling. In Robins, the State appealed from an order dismissing a criminal complaint because the applicable statute of limitations had expired. Stokes relied on the following language from Robins:

"Public policy clearly favors correction of errors at the trial level. We have previously held that a motion to reconsider is an appropriate method to be utilized in directing the attention of the trial judge to [a] claim of error. (Childress v. State Farm Mutual Automobile Insurance Co. (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492.) The time for appeal commenced with the denial of that motion." Robins, 33 Ill. App. 3d at 636.

Defendant correctly points out that Robins based its holding on a decision in a civil appeal--Childress. Civil and criminal appeals are governed by different rules, although there is substantial overlap (see 210 Ill. 2d R. 612). When Childress was decided, Supreme Court Rule 303(a) (36 Ill. 2d R. 303(a)), which applies to civil appeals, provided that, if a party filed a timely posttrial motion, the notice of appeal was due within 30 days after entry of the order disposing of the motion. However, the rule governing the perfection of appeals in criminal proceedings tolled the time for filing the notice of appeal only "if the appellant applies for probation or files a motion for a new trial or in arrest of judgment." 36 Ill. 2d R. 606(b). Thus, Childress provides no analytical support for Robins.

We need not decide, however, whether Robins was correctly decided. Even if Rule 303(a)'s tolling principle applied in criminal cases, Robins, like Childress, nevertheless involved a final judgment or order. Stokes, however, involved an interlocutory order--one suppressing evidence. See People v. Leach, 245 Ill. App. 3d 644, 653 (1993) ("A suppression order does not finally adjudicate a criminal prosecution, but only bars certain evidence from the impending trial"). Even in civil cases, "a motion attacking an interlocutory order will not toll the running of the 30-day

deadline for the filing of the notice of appeal." Craine v. Bill Kay's Downers Grove Nissan, 354 Ill. App. 3d 1023, 1026 (2005). Thus there is no valid precedent--civil or criminal--for the tolling rule announced in Stokes.

All the same, the dissent endorses the result in Stokes, asserting that "[i]t is the reasoning of the case, the basis in public policy, that gives the tolling rule force, not solely its provenance." (Emphasis added.) Slip op. at 22. Thus, the dissent does not hold Robins and Stokes up as models of legal analysis. What redeems these decisions, in the dissent's eyes, is the public policy they express. The dissent's thesis is straightforward: there is support in the case law for the proposition that public policy favors correction of errors at the trial level, and tolling the time for filing an appeal advances that public policy objective.

If public policy is seen as the driving force in fashioning principles of appellate jurisdiction, things seem to fall into place--at least initially. Childress's tolling rule in civil cases conforms to the applicable supreme court rule and to the public policy favoring correction of errors in the trial court. The same public policy supports Robins's application of the tolling rule to final judgments in criminal cases even though, at that time, no supreme court rule provided for such a result. The dissent's reasoning runs less smoothly, however, with respect to interlocutory orders. In the dissent's view, public policy supports extending the tolling rule to interlocutory appeals in criminal cases, even if no supreme court rule so provides and even though the rule applicable in civil cases does not permit tolling. The dissent notes that, in civil cases, interlocutory orders from which an appeal may be taken ordinarily involve some burden or hardship, and the public policy favoring prompt appellate review of such orders "trumps the public policy preference of allowing trial courts to correct their errors in order to prevent needless appeals." Slip op. at 23. According to the dissent, this public policy does not apply to a defendant who has successfully moved to suppress evidence.

We disagree. Permitting the State to delay its appeal, possibly for months, can cause significant hardship. First, the delay prolongs the anxiety attendant to facing criminal charges. An even more tangible hardship arises because a defendant is ordinarily entitled to be released from custody without bail while an appeal by the State is pending. See 210 Ill. 2d R. 604(a)(3) ("A defendant shall not be held in jail or to bail during the pendency of an appeal by the State *** unless there are compelling reasons for his or her continued detention"). In contrast, so far as we are aware, a defendant has no right to be released from custody merely because he has prevailed on a motion to suppress evidence. Thus a defendant who has not been admitted to bail, or who cannot afford to post bail, may very well have to remain in custody for several months while the motion for reconsideration is adjudicated.

That said, our fundamental disagreement with the dissent's approach to the jurisdictional issue--at least as that approach takes shape in the first section of the dissent--is that it treats public policy as the polestar of the jurisdictional analysis. Public policy is relevant to the inquiry insofar as it finds expression in our supreme court's rules governing interlocutory appeals. But the law could not be more clear that the rules themselves are paramount. Our state constitution provides:

> "Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court in the Judicial District in which the Circuit Court is located except in cases appealable directly to the Supreme Court and except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal. The Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." (Emphasis added.) Ill. Const. 1970, art. VI, §6.

Supreme Court Rule 604(a) (210 Ill. 2d R. 604(a)) permits interlocutory appeals from orders suppressing evidence, and Supreme Court Rule 606 (210 Ill. 2d R. 606) specifies the manner in

which such appeals are perfected. We thus may not follow <u>Stokes</u> solely on the strength of a public policy rationale, ignoring <u>Stokes</u>'s failure to justify its result with reference to the supreme court rules governing appeals from suppression orders. We may not simply substitute our own view of sound public policy for the express command of these rules. The question before us is not whether it is desirable to toll the time for filing a notice of appeal while a motion to reconsider is pending. The question, rather, is whether the applicable supreme court rules call for doing so.

Before tackling that question, we briefly consider the four remaining decisions applying a tolling rule: <u>Van Matre</u>, <u>Burks</u>, <u>Rimmer</u>, and <u>Smith</u>. <u>Van Matre</u> relied on <u>Stokes</u> and <u>Robins</u> (<u>Van Matre</u>, 164 Ill. App. 3d at 203), and <u>Burks</u> relied on <u>Van Matre</u> (<u>Burks</u>, 355 Ill. App. 3d at 754). Neither <u>Van Matre</u> nor <u>Burks</u> contains any independent analysis of the jurisdictional issue, so those cases are no more persuasive than <u>Stokes</u>.

In <u>Rimmer</u>, the trial court granted a motion to quash and suppress. The State later filed a motion to admit certain statements based on "attenuating circumstances." <u>Rimmer</u>, 132 Ill. App. 3d at 111. The trial court denied the motion and the State appealed. On appeal, the court held that the motion to admit statements was, in substance, a motion to reconsider the suppression ruling. The court held that the appeal was timely, but cited no authority and offered no analysis in support of the implicit premise that a motion for reconsideration tolls the time for appealing from an order suppressing evidence. See <u>Rimmer</u>, 132 Ill. App. 3d at 111.

<u>Smith</u> cited <u>People v. Williams</u>, 138 Ill. 2d 377 (1990), for the proposition that "[a] timely motion for reconsideration of a ruling granting a suppression motion will toll the time to file a notice of appeal." <u>Smith</u>, 232 Ill. App. 3d at 127. <u>Williams</u> held that, where the State does not appeal from an adverse suppression ruling or seek reconsideration of it during the time for taking an appeal, it cannot later relitigate the issue in the trial court. Thus, <u>Williams</u> is not authority for the proposition

stated in <u>Smith</u>. The dissent acknowledges that <u>Smith</u> misstates the holding of <u>Williams</u>. Slip op. at 24. However, the dissent notes that "<u>Williams</u> also reasoned that 'statutory and judicial policy favors giving a circuit court "the opportunity to reconsider final and appealable judgments and orders within 30 days of their entry" as long as no notice of appeal has yet been filed.' " Slip op. at 24, quoting <u>Williams</u>, 138 Ill. 2d at 394, quoting <u>People v. Heil</u>, 71 Ill. 2d 458, 461 (1978). This reasoning has no application here, as the trial court did not reconsider a final judgment and it did not do so within 30 days.

The dissent notes that the principle was extended to interlocutory orders in <u>People v. Mink</u>, 141 Ill. 2d 163 (1990). The <u>Mink</u> court stated that "[a] court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority" and that this power "extends to interlocutory, as well as final, judgments." <u>Mink</u>, 141 Ill. 2d at 171. The issue before us, however, is not whether the court has the power to reconsider its rulings, but whether the pendency of a motion for reconsideration affects the requirements for perfecting an interlocutory appeal. The dissent's reasoning is based on public policy, but <u>Mink</u> said nothing about public policy. And if there are any public policy implications of a trial court's inherent power to reconsider its interlocutory rulings, the implications should be the same in a civil case where a trial court has the same power. See, <u>e.g.</u>, <u>Catlett v. Novak</u>, 116 Ill. 2d 63, 68 (1987). However, as we held in <u>Craine</u>, a motion to reconsider has no effect on the time for perfecting an appeal from an interlocutory order in a civil case. We note that the appeal in <u>Mink</u> was from a final judgment, to wit, the reinstatement of the defendant's conviction after the trial court, on the State's motion for reconsideration, vacated an order granting the defendant a new trial. <u>Mink</u> says nothing about tolling; before the trial court granted the motion to reconsider, there was no order from which an appeal could be taken. Accord <u>People v. Hammond</u>, 18 Ill. App. 3d 693, 696 (1974).

We do not demand symmetry in civil and criminal appeals. Rather, we ask only for adherence to the applicable supreme court rules governing appellate jurisdiction in each setting, whether or not they yield similar results in procedurally analogous cases. Our point in once again citing Craine is simply that a tolling rule is not a necessary corollary of the trial court's inherent power to correct its own errors, as the dissent evidently believes.[1]

We now turn our attention to the supreme court rules that, as previously noted, govern the jurisdictional question in this case. Supreme Court Rule 604(a)(1) (210 Ill. 2d R.604(a)(1)) states in pertinent part that "[i]n criminal cases the State may appeal *** from an order or judgment the substantive effect of which results in *** suppressing evidence," but does not specify when the State's notice of appeal must be filed. The time for filing the notice of appeal in a criminal case is the subject of Supreme Court Rule 606(b), which provides:

---

[1]See slip op. at 27 ("In order to give effect to [the court's inherent power to correct errors in interlocutory orders], the tolling rule must apply to motions to reconsider; otherwise an appellant will have to choose between taking a chance that the trial court will correct its error, or losing the right to appeal"). We note that the dissent's view presupposes that it is impossible or at least impractical for the trial court to rule on a motion to reconsider within 30 days after the initial suppression order. However, as the dissent candidly acknowledges, in several reported decisions reconsideration of the suppression ruling was accomplished within this time frame, allowing the State to perfect its appeal without the benefit of a tolling rule. See slip op. at 35, citing People v. Gott, 346 Ill. App. 3d 236 (2003); People v. Evans, 314 Ill. App. 3d 985 (2000); People v. DeBlieck, 181 Ill. App. 3d 600 (1989); People v. Zeigler, 106 Ill. App. 3d 783 (1982).

"Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion. When a timely posttrial or postsentencing motion directed against the judgment has been filed *** any notice of appeal filed before the entry of the order disposing of all pending postjudgment motions shall have no effect and shall be stricken by the trial court. Upon striking the notice of appeal, the trial court shall forward to the appellate court within 5 days a copy of the order striking the notice of appeal, showing by whom it was filed and the date on which it was filed. This rule applies whether the timely postjudgment motion was filed before or after the date on which the notice of appeal was filed. A new notice of appeal must be filed within 30 days following the entry of the order disposing of all timely postjudgment motions. Within 5 days of its being so filed a copy of the notice of appeal or an amendment of the notice of appeal shall be transmitted by the clerk of the circuit court to the clerk of the court to which the appeal is taken. Except as provided in paragraph (c) below, and in Rule 604(d), no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken. The clerk of the appellate court shall notify any party whose appeal has been dismissed under this rule." 210 Ill. 2d R. 606(b).

We interpret a supreme court rule in the same manner as a statute. People v. King, 349 Ill. App. 3d 877, 878 (2004). Our "primary objective is to ascertain and give effect to the drafter's intent," the best indication of which is "the rule's language, given its plain and ordinary meaning." King, 349 Ill. App. 3d at 878.

As defendant correctly notes, the first sentence of Rule 606(b) provides that a notice of appeal must be filed within 30 days of a <u>final</u> judgment unless a motion directed against the judgment is timely filed. Thus, the tolling rule embodied in this sentence and the four that follow applies to final judgments. The penultimate sentence of the rule, which is not limited to final judgments, contains no explicit tolling provision. As applied to final judgments, the first five sentences of the rule and the penultimate sentence could produce different results. The conflict may be resolved, however, by applying the principle of construction that, "[w]here a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern." <u>Moore v. Green</u>, 219 Ill. 2d 470, 480 (2006). The first five sentences are more specific, as they apply only to final judgments. Thus, a timely motion directed against a <u>final</u> judgment will toll the time for filing a notice of appeal from that judgment. However, an appeal from an <u>interlocutory</u> order may not be taken after the expiration of 30 days from the entry of the order. Our interpretation is consistent with our decision in <u>King</u> where we concluded that, because the penultimate sentence of Rule 606(b) is not limited to appeals from final judgments, it governs appeals from interlocutory orders denying motions to dismiss on grounds of former jeopardy. <u>King</u>, 349 Ill. App. 3d at 880.

The dissent suggests that the possible conflict between the first five sentences of the rule and the penultimate sentence justifies an extratextual approach to construction. According to the dissent, the principle of "acquiescence" should be applied so as to construe the rule in accordance with <u>Burks</u>, <u>Smith</u>, <u>Van Matre</u>, <u>Rimmer</u>, and <u>Stokes</u>.

> "The general rule is, that where terms used in the statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments or re-enactments of the statute, they are to be understood and interpreted in the same sense

theretofore attributed to them by the court unless a contrary intention of the legislature is made clear. The judicial construction becomes a part of the law, and it is presumed that the legislature in passing the law knew such construction of the words in the prior enactment." People ex rel. Nelson v. Wiersema State Bank, 361 Ill. 75, 78-79 (1935).

Similarly, "where the legislature chooses not to amend terms of a statute after judicial construction, it will be presumed that it has acquiesced in the court's statement of legislative intent." R.D. Masonry, Inc. v. Industrial Comm'n, 215 Ill. 2d 397, 404 (2005). However, the presumption "is merely a jurisprudential principle; it is not a rule of law." People v. Perry, 224 Ill. 2d 312, 331 (2007). A leading commentator has criticized the principle of acquiescence as an unreliable test of legislative intent. See 2B N. Singer, Sutherland on Statutory Construction §49.10 (6th ed. 2000). Although similar criticism has not been voiced in reported Illinois decisions, it is clear that our supreme court has not always scrupulously adhered to the acquiescence principle. For instance, in McMahan v. Industrial Comm'n, 183 Ill. 2d 499 (1998), the court repudiated Childress v. Industrial Comm'n, 93 Ill. 2d 144 (1982)--a decision interpreting language from section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 1992))--because "[t]he court's holding in Childress was premised on an overly narrow and incorrect reading of the relevant statutory provisions." McMahan, 183 Ill. 2d at 511. The McMahan court was evidently unfazed by the fact that, during the 16 years since Childress was decided, the General Assembly had amended section 16 three times (see Pub. Act 83--341, §3, eff. September 14, 1983; Pub. Act 83--1125, §1, eff. June 30, 1984; Pub. Act 86--998, §1, eff. December 18, 1989), but had not touched the language construed by the supreme court in Childress.

It is also debatable whether the threshold requirement for application of the principle--that the terms used in Rule 606(b) "have acquired a settled meaning through judicial construction"--has

been met here. None of the decisions on which the dissent relies actually explored the language of Rule 606(b). As we noted, the decisions were based on public policy rather than construction of Rule 606(b), which was mentioned only parenthetically. For all practical purposes, the cases simply ignored the rule. We question whether this may be properly called "judicial construction."

Moreover, although supreme court rules are construed in the same manner as statutes, application of the acquiescence principle to a supreme court rule is analytically problematic. The dissent's argument is that the supreme court has had opportunities to amend Rule 606(b) to correct the results in Stokes and similar cases; by not availing itself of these opportunities, the court has acquiesced in those results. In fact, the supreme court had even more direct opportunities to repudiate the tolling rule. Leave to appeal was sought in Burks, Smith, and Van Matre. The supreme court denied leave to appeal in all three cases. See People v. Burks, 215 Ill. 2d 602 (2005); People v. Smith, 146 Ill. 2d 647 (1992); People v. Van Matre, 119 Ill. 2d 572 (1988). If the failure to amend a court rule after it has been construed by a lower court amounts to acquiescence in the construction, then it would also seem that denial of a petition for leave to appeal should signal acquiescence. Indeed, by seeking leave to appeal, a party specifically brings the case construing the rule to the supreme court's attention, so the argument for presuming acquiescence should be that much stronger when leave to appeal is denied. It is well established, however, that the denial of a petition for leave to appeal "has no precedential effect and in no way amounts to a consideration of the merits of the case[]" and does not "indicate approval of the appellate court's action." Relph v. Board of Education of DePue Unit School District No. 103, 84 Ill. 2d 436, 442 (1981). It is incongruous to presume acquiescence when the court fails to amend a rule, even though acquiescence cannot be presumed when the court forgoes a direct opportunity to correct an erroneous construction of a rule.

-13-

The dissent also offers an alternative textual analysis of Rule 606(b)'s first sentence, which states, in pertinent part, "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the <u>final judgment</u> appealed from or if a motion directed against <u>the judgment</u> is timely filed, within 30 days after the entry of the order disposing of the motion." (Emphasis added.) 210 Ill. 2d R. 606(b). The dissent suggests that the word "final" modifies only the first instance of the word "judgment," not the second. Under this reading, "a notice of appeal must be filed within 30 days of the final judgment, or within 30 days after the ruling on a timely motion to reconsider directed against any appealable judgment, final or interlocutory." Slip op. at 46. In our view, the dissent's reading is at odds with the fact that the second time the word "judgment" appears, it is preceded by the definite article "the," which is used, <u>inter alia</u>, "as a function word to indicate that a following noun or noun equivalent refers to someone or something previously mentioned or clearly understood from the context of the situation." Webster's Third New International Dictionary 2368 (1986). The only reasonable reading of the first sentence, then, is that "the judgment" encapsulates the term "final judgment appealed from."

We note that the dissent's reading of Rule 606(b) would appear to foreclose any appeal from an interlocutory order if no motion to reconsider has been filed. The dissent claims this is not so, because the penultimate sentence of the rule permits an appeal from an interlocutory order within 30 days of its entry. This view not only ignores the definite article in the first sentence, but also fails to give any effect to the word "final." If the dissent is correct that appeals from final judgments and interlocutory orders may, in either case, be taken within 30 days of the judgment or order itself, or within 30 days of the entry of an order disposing of the motion, the word "final" serves no discernible purpose. It would appear that, without the word "final," the results would be exactly the same.

The dissent's remaining argument for recognition of a tolling rule invokes considerations of stare decisis. But stare decisis considerations do not apply to decisions from other judicial districts of the appellate court. People v. DeVoss, 150 Ill. App. 3d 38, 40 (1986). The decisions that the dissent relies on are not from the Second District; consequently, we are not obliged to follow them. According to the dissent, DeVoss confuses the doctrine of stare decisis with the principle of hierarchical decision making, under which lower courts are bound by the decisions of higher ones. We disagree. Nowhere does DeVoss assert that stare decisis governs a lower court's treatment of the decision of a higher court; it asserts only that stare decisis does not govern one appellate court district's treatment of the decision of another appellate court district. This is not at all a controversial proposition; indeed, among the circuits of the United States Court of Appeals, which are analogous to the districts of the Illinois Appellate Court, "there is no rule of intercircuit stare decisis." Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998). Thus, although of course we may defer to other districts' decisions on the basis of comity (see, e.g., Villalobos v. F.D.L. Foods, Inc., 298 Ill. App. 3d 132, 141 (1998)), we are free to disregard them without any concern for stare decisis.

The dissent further argues that, if we decline to follow the course set by Stokes and its progeny, we should apply our decision only prospectively in accordance with the principles described in Aleckson v. Village of Round Lake Park, 176 Ill. 2d 82, 91 (1997). We decline to do so at this juncture. In Aleckson, our supreme court reviewed our decision to apply one of our earlier decisions--Mueller v. Board of Fire & Police Commissioners, 267 Ill. App. 3d 726 (1994)--only prospectively. Mueller--which was decided while Aleckson was pending before this court--held that an administrative decision pertaining to the promotion of a police officer is subject to the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 1992)) and that an action seeking review of such a decision must be filed within 35 days after the decision is issued. Application of

-15-

the Administrative Review Law in <u>Aleckson</u> would have resulted in dismissal of the plaintiffs' action. We concluded that to do so would be unjust because the plaintiffs had filed their action in compliance with the law as it existed prior to <u>Mueller</u>.

Our supreme court stated:

"Generally, when a court issues an opinion, the decision is presumed to apply both retroactively and prospectively. [Citations.] That presumption can be overcome in two types of circumstances. First, the issuing court itself may expressly state that its decision will be applied prospectively only. [Citation.] Second, a later court may, under certain circumstances, override the presumption by declining to give the previous opinion retroactive effect, at least with respect to the parties appearing before the later court. The present case falls under the latter category. Accordingly, we will confine our discussion to cases which involve situations in which a later court is deciding whether to give a previous decision prospective effect only." <u>Aleckson</u>, 176 Ill. 2d at 86-87.

The defendants argued that only the supreme court had the power to give a decision only prospective effect. The <u>Aleckson</u> court flatly rejected the argument. <u>Aleckson</u>, 176 Ill. 2d at 91.

Although <u>Aleckson</u> clearly stands for the proposition that the appellate court has the <u>power</u> to give a decision only prospective effect, it would seem that the exercise of that power necessarily presupposes that the appellate court has jurisdiction over the appeal. Our jurisdiction is, after all, the basis of our power to act. It is one thing to hold that a reviewing court that has jurisdiction to hear an appeal may apply a prior decision only prospectively. It is quite another to hold that a reviewing court that has found its jurisdiction lacking may nonetheless act outside its jurisdiction on the theory that it is empowered to apply its jurisdictional decision only prospectively. To so hold

would empower the reviewing court to exercise jurisdiction where none exists. We are hesitant to extend Aleckson in this manner without clear direction from our supreme court.

We need not definitively resolve the question in this case, however. As Aleckson demonstrates, the question of prospectivity may be taken up in subsequent cases as is necessary or appropriate. Moreover, it has long been the law that, "[o]n those occasions when prospective application is warranted, the holding of the court still controls the case at bar; to not apply the rule would render it dictum and deprive the challenger the fruits of his efforts in questioning the old, erroneous rule." John Carey Oil Co. v. W.C.P. Investments, 126 Ill. 2d 139, 149 (1988); see also Department of Transportation ex rel. People v. Hunzicker, 342 Ill. App. 3d 588 (2003). Thus, even if we were now to rule that our holding should be only prospective, we would still be obliged to dismiss the State's appeal.

In sum, the order quashing defendant's arrest and suppressing evidence was not a final judgment, so the State's motion to reconsider did not toll the 30-day period for filing a notice of appeal. That period expired on September 11, 2006. The State's notice of appeal, filed on October 23, 2006, was untimely and did not confer jurisdiction on this court.

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction. However, because we are creating a split of authority, and because a substantial number of cases involving this issue are currently pending, we have, "on our own motion, granted a certificate of importance [(Official Reports Advance Sheet No. 26 (December 20, 2006), R. 316, eff. December 6, 2006)] and directed the same to issue." People v. Butchek, 22 Ill. App. 3d 391, 403 (1974); see also Scott v. Industrial Comm'n, 184 Ill. 2d 202, 215 (1998) (noting without objection appellate court's sua sponte issuance of certificate of importance).

Appeal dismissed.

No. 2--06--1071

GILLERAN JOHNSON, J., concurs.

JUSTICE O'MALLEY, dissenting:

This case poses the question of whether the State's timely filed motion to reconsider will toll the 30-day period in which to file a notice of appeal from the trial court's grant of the defendant's motion to suppress evidence. The issue between the majority and the dissent, however, is whether this court should follow the doctrine of stare decisis, even though, arguably, the rationale underpinning the tolling rule is wrong, but well established. Central to the doctrine of stare decisis is the idea that, usually, it is more important that the law be settled than it be settled correctly. People v. Jones, 207 Ill. 2d 122, 134 (2003). Because the tolling rule has been established and unquestioningly followed, even by this court, for more than 30 years, I respectfully dissent from the majority's alternative. Additionally, I offer several rationales that independently support the tolling rule as it is now articulated.

As my disagreement with the majority is its abandonment of settled precedent, I first trace the history of that precedent. Then I discuss stare decisis and how the precedent has been implicitly followed. Last, I offer an alternate interpretation of the rule that avoids the necessity of abandoning the long-standing tolling rule.

A. Stare Decisis

1. History of the Tolling Rule

The majority correctly identifies the cases comprising all of the reported cases that have considered expressly the question of whether the State's motion to reconsider a grant of a defendant's motion to suppress evidence will toll the 30-day period for filing a notice of appeal to vest the appellate court with jurisdiction. I note that each of the cases holds that the motion to reconsider tolls the time to appeal and that a notice of appeal filed within 30 days after the resolution of the

-18-

motion to reconsider will be deemed timely, or else cites to a case so holding.[2]  See People v. Robins, 33 Ill. App. 3d 634, 636 (1975) (time period for filing notice of appeal commences with the disposition of the motion to reconsider); People v. Stokes, 49 Ill. App. 3d 296, 298 (1977) (same, relying on Robins); People v. Clark, 80 Ill. App. 3d 46, 48-49 (1979) (the defendant's notice of appeal timely when it was filed within 30 days of the denial of the defendant's motion to reconsider, relying on Robins); People v. McBride, 114 Ill. App. 3d 75, 80 (1983) (the State may file a motion to reconsider an order of suppression before it files a notice of appeal, relying on People v. Wagner, 100 Ill. App. 3d 1051, 1053 (1981) (appeal is not the exclusive remedy available to the State to challenge a suppression order; the State may move the trial court to reconsider its ruling, relying on Robins and Stokes)); People v. Rimmer, 132 Ill. App. 3d 107, 111 (1985) (time for filing notice of appeal commenced with the disposition of the State's motion to reconsider, relying on Clark and Wagner); People v. Van Matre, 164 Ill. App. 3d 201, 202-03 (1988) (same, relying on Rimmer, McBride, Stokes, and Robins); People v. Smith, 232 Ill. App. 3d 121, 127 (1992) (same, relying on People v. Williams, 138 Ill. 2d 377 (1990)); People v. Burks, 355 Ill. App. 3d 750, 754 (2004) (same, relying on Van Matre).  The majority's position, and I concede it is not unreasonable, is that, if the authority upon which the edifice has been founded is shaky, then the edifice itself is unsound and subject to reexamination.  As can be seen from the citation string above, seven of the cases (all except Smith) rely directly on Robins, or on a case that relies directly on Robins.  Smith, by contrast, relies on our supreme court's decision in Williams.  I will therefore focus on Robins and Smith.

     Robins incorporated the notion:

---

[2]I include, for completeness' sake, the six cases identified by defendant (of which the majority considers four) and the two additional cases identified by the majority.

"Public policy clearly favors correction of errors at the trial level. We have previously held that a motion to reconsider is an appropriate method to be utilized in directing the attention of the trial judge to [a] claim of error. (Childress v. State Farm Mutual Automobile Insurance Co. (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492.) The time for appeal commenced with the denial of that motion [to reconsider]." Robins, 33 Ill. App. 3d at 636.

This concept apparently arose fully formed and developed from the civil law. Robins offers no analysis or consideration of the propriety, if any, of engrafting principles derived from the civil law onto the criminal law. On the other hand, the issue pertains to the regulation of the courts, and a court's ability to correct its errors, which would not seem to vary significantly between the civil and criminal arenas. The force of the holding in Robins, then, should be commensurate with the soundness of its reasoning. Robins purports to base its holding on the "[p]ublic policy favor[ing] correction of errors at the trial level." This notion of providing the opportunity for a quick and expeditious method to correct errors short of appeal has been repeatedly confirmed and endorsed by our supreme court (People v. Mink, 141 Ill. 2d 163, 171 (1990) ("A court in a criminal case has inherent power to reconsider and correct its own rulings"); People v. Heil, 71 Ill. 2d 458, 461 (1978) (relevant statutes and court rules "demonstrate the intent that in criminal as well as civil matters the circuit court be given the opportunity to reconsider final appealable judgments and orders within 30 days of their entry")) and the appellate court (People v. Bryant, 369 Ill. App. 3d 54, 60-61 (2006) ("Public policy favors correcting errors at the trial level, and a timely motion to reconsider is an appropriate method to direct the trial court's attention to a claim of error"); People v. Hess, 241 Ill. App. 3d 276, 282 (1993) (agreeing with postsentencing motion requirement to preserve sentencing error for appeal due to policy that "a trial court should first be given an opportunity to correct any error that might have occurred so as to avoid needless appeals"); People v. Swiercz, 104 Ill. App.

3d 733, 735 (1982) ("public policy favor[s] that errors be corrected at the trial level")). Indeed, the supreme court rules themselves expressly allow a timely postjudgment motion to toll the time for appeal. 210 Ill. 2d R. 606(b). Admittedly, Bryant and Swiercz derive the public policy rule from Robins or cases expressly relying on Robins, but this does not diminish the fact that, more than 30 years after Robins was promulgated, courts still invoke the public policy set forth in Robins. In my view, then, the logical force motivating the Robins rule is clear and compelling and definitely retains force and relevance today. Whatever infirmity arises from Robins' importation of a civil rule into a criminal context is more than offset by its viable expression of public policy as the motivating factor behind the rule. Robins remains good law and the cases that rely on Robins are likewise rendered persuasive by the force of the Robins holding.

I recognize that the majority does not directly assail Robins. Instead, it attacks Stokes, which derived its tolling rule from Robins. It finds Robins to be factually distinguishable because Robins involved a final order while Stokes involved the same sort of interlocutory order--a grant of a defendant's motion to suppress evidence--that is at issue here. According to the majority, therefore, Stokes' reliance on Robins is unpersuasive and suspect both for the importation of civil law and the factual difference. I disagree. Just as Robins' expression of the public policy behind the tolling rule retains vitality, so too does Stokes' explanation. It is the reasoning of the case, the basis in public policy, that gives the tolling rule force, not solely its provenance. If there were no legitimate policy rationale behind the rule, then it would have been superceded or otherwise displaced. The fact that it has the legs to be cited as justification 30 years later suggests that it was an apt expression of public policy then and now. Thus, regardless of whether Robins appropriately cited Childress for the tolling proposition, it clearly expressed the public policy behind the tolling rule, and that public policy provides the valid analytical support for Stokes.

The majority also assails <u>Stokes</u> on the ground that, if it is applying civil principles to criminal appeals, then the motion to reconsider, being a motion directed against an interlocutory order, is ineffective to toll the running of the 30-day time period for filing a notice of appeal. The majority cites to <u>Craine v. Bill Kay's Downers Grove Nissan</u>, 354 Ill. App. 3d 1023, 1026 (2005), which, in turn, relies upon <u>Trophytime, Inc. v. Graham</u>, 73 Ill. App. 3d 335, 335-36 (1979), for the proposition that a motion to reconsider is ineffective to toll the time for appeal from an interlocutory order. Both <u>Craine</u> and <u>Trophytime</u>, however, were brought pursuant to Rule 307 (188 Ill. 2d R. 307), which allows for certain interlocutory appeals as a matter of right. The rationale behind the rule is that the type of interlocutory orders to which Rule 307 pertains "ordinarily has a substantial impact upon one of the parties." <u>Trophytime</u>, 73 Ill. App. 3d at 336. To allow the time for appeal to be tolled would prolong the harsh burden or substantial impact of the interlocutory order on one of the parties, thereby frustrating the purpose of Rule 307, to allow a prompt review of the interlocutory order. <u>Craine</u>, 354 Ill. App. 3d at 1028. In other words, the public policy consideration of mitigating the burden on the parties in the case of an injunctive order (or other type of interlocutory order specified in Rule 307) trumps the public policy preference of allowing trial courts to correct their errors in order to prevent needless appeals. I disagree with the majority's interpretation of the import of <u>Craine</u> and <u>Trophytime</u> as it impacts the rule set forth in <u>Stokes</u> and <u>Robins</u>. It is easily explained by looking to the public policy motivating each line of decisions. The public policy motivating <u>Craine</u> does not apply to the defendant who successfully moves to suppress evidence, because of society's strong interest in having the trial court correct its own errors, if any, in granting the motion to suppress.

The majority worries that following the well-settled tolling rule is inimical to a defendant's right to have the charges against him expeditiously resolved. Slip op. at 6, 14-15. This is a

significant concern. The majority recognizes the troubling issue raised by the continued incarceration of a defendant who, while the motion to reconsider is pending, cannot be released on bail versus the defendant who is generally entitled to be released from custody while the State's appeal is pending. Slip op. at 6. However, when a motion to suppress is granted, the result is that evidence of a defendant's guilty conduct is suppressed because the defendant's constitutional rights were violated in some manner. The societal interest in getting the suppression ruling right is manifest. Moreover, allowing only the defendant to avail him- or herself of the trial court's inherent error-correcting powers biases the system in favor of defendants. If only the defendant can file a motion to reconsider, then only those erroneous decisions against defendants will be corrected; the erroneous decisions against the State will escape review. This may be a desirable bias to the system; it may not be. I believe, however, that it is not this court's call--I would leave it to the supreme court or to the legislature to decide whether such a systemic bias should be created.

I would accept the statements of the tolling rule in Robins, Stokes, Clark, McBride, Rimmer, Van Matre, and Burks at face value. In my view, they are underpinned by a proper and valid expression of public policy to which the majority gives too little weight in its analysis.

In Smith, the court relied on Williams, 138 Ill. 2d 377, for the proposition that "[a] timely motion for reconsideration of a ruling granting a suppression motion will toll the time to file a notice of appeal." Smith, 232 Ill. App. 3d at 127. The majority notes that "Williams held that, where the State does not appeal from an adverse suppression ruling or seek reconsideration of it during the time for taking an appeal, it cannot later relitigate the issue in the trial court." Slip op. at 8. In reaching its holding, however, Williams also reasoned that "statutory and judicial policy favors giving a circuit court 'the opportunity to reconsider final appealable judgments and orders within 30 days of their entry' as long as no notice of appeal has yet been filed." Williams, 138 Ill. 2d at 394,

quoting Heil, 71 Ill. 2d at 461. (It should be noted that Williams did not involve a successful motion to suppress, a timely motion in the trial court to reconsider, followed by a notice of appeal filed within 30 days of the denial of the motion to reconsider; instead, Williams involved a successful motion to suppress, a timely notice of appeal, abandonment of the appeal, and the State's motion (held to be improper) to consider the attenuation of a confession from an unlawful arrest, more than a year after the suppression motion had been granted. Williams, 138 Ill. 2d at 382-85. Thus, Williams is procedurally distinct from the case at bar.) Smith, then, relied on Williams' statement of "statutory and judicial policy" to support its tolling-rule holding. Smith, 232 Ill. App. 3d at 127.

Williams, in turn, relied on Heil for the proposition that "[t]he relevant statues, and the rules promulgated by [the supreme court], demonstrate the intent that in criminal as well as civil matters the circuit court be given the opportunity to reconsider final appealable judgments and orders within 30 days of their entry." Heil, 71 Ill. 2d at 461, citing, among others, 58 Ill. 2d R. 606(b). (Again, like Williams, so too is Heil procedurally distinct, arising from a defendant's initially successful motion to dismiss on speedy trial grounds, which, at the motion of the State, the trial court reconsidered and reversed its original ruling.) Obviously, Heil and Williams expressed the public policy in relation only to final and appealable judgments. The supreme court was not, however, finished with its exposition of public policy.

Next, in Mink, the supreme court found that the public policy was better served by expanding its rationale to include interlocutory judgments. In Mink, our supreme court stated that "[a] court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority. [Citations.] A court's power to reconsider and correct its decisions extends to interlocutory, as well as final, judgments." Mink, 141 Ill. 2d at 171. (Mink, too, is procedurally distinct, arising from the trial court's reversal, after reconsideration, of its

decision to grant the defendant a new trial, an interlocutory order.) In reaching its conclusion on the inherent power of a court, Mink relied upon Heil, 71 Ill. 2d at 461.

Mink, Williams, and Heil contain clear and unambiguous expressions of public policy favoring allowing the trial court to reconsider its rulings, and this public policy includes reconsidering interlocutory judgments. The cases cited by the majority implement this policy in reference to Rule 606(b). Based on the valid public policy motivating the tolling rule in all of the cases considered by the majority, I would adhere to their consistent holdings that a timely motion to reconsider a grant of a defendant's motion to suppress tolls the time for taking an appeal.

The majority takes issue with my elucidation of the public policy underpinning the tolling rule, contending that it has no basis in the supreme court rules. See slip op. at 6. This is not exactly true. If I may presume to restate the majority's rationale, it is not so much that the tolling rule expressly stated in Robins, Stokes, Rimmer, Van Matre, Smith, and Burks cannot be traced to clear supreme court statements of precisely that public policy in Heil, Williams, and Mink, but that the appellate court cases did not bother to textually analyze Rule 606 in announcing the tolling rule. I agree with the majority that this is a problem. I note, however, that five cases expressly linked the tolling rule with Rule 606 (Robins, 33 Ill. App. 3d at 636; Stokes, 49 Ill. App. 3d at 298; Clark, 80 Ill. App. 3d at 48-49; Van Matre, 164 Ill. App. 3d at 203; Burks, 355 Ill. App. 3d at 754), one referenced only Rule 604 and the supreme court statements of public policy (Smith, 232 Ill. App. 3d at 127), and two relied only on the other appellate cases (McBride, 114 Ill. App. 3d at 79-80; Rimmer, 132 Ill. App. 3d at 111). Thus, even though we can challenge the legal reasoning employed in Robins, Stokes, Clark, Van Matre, and Burks, we cannot challenge the fact that they, rightly or wrongly, interpreted Rule 606 to contain the tolling rule that those cases set forth. I also note that Heil, 71 Ill. 2d at 460-61, expressly considered Rule 606, among others, in concluding that the

public policy of the state favored allowing a trial court to correct its errors via a motion to reconsider, following which the right of appeal would remain undisturbed. (Williams and Mink did not link their statements of public policy to the supreme court rules, but only to Heil. Williams, 138 Ill. 2d at 394; Mink, 141 Ill. 2d at 171.)

The majority further questions the public policy underpinnings of the tolling rule, asserting that, despite Mink's statement that "[a] court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority," and this power "extends to interlocutory, as well as final, judgments" (Mink, 141 Ill. 2d at 171), Mink nevertheless "said nothing about public policy" (slip op. at 8-9). While Mink did not preface its pronouncement about a court's inherent powers with the words, "this is the state's public policy," I fail to see any other way to interpret Mink's statement about a court's inherent powers than as a statement about public policy. If I am reading too much into Mink, then the majority is reading far too little. The majority notes that Mink arose from a final order reinstating the defendant's conviction after the State moved for reconsideration of the trial court's grant of a new trial. Slip op. at 8-9; see Mink, 141 Ill. 2d at 169. This procedural posture nevertheless does not undermine or diminish Mink's clear statement of public policy. Mink noted the actual context of its statement that the court's error-correction power extended to interlocutory orders: "Even if the trial court here correctly determined that the State's evidence was insufficient to establish venue, it did not enter a final judgment of acquittal. Rather, it granted the defendant's motion for a new trial. This order was interlocutory in nature." Mink, 141 Ill. 2d at 171. Mink clearly stated that a court's inherent power to correct its own errors extended to interlocutory orders. In order to give effect to that power, the tolling rule must apply to motions to reconsider; otherwise an appellant will have to choose between taking a chance that the trial court will correct its error and losing the right to appeal. Heil

specifically disapproved of that result: "We find nothing in these cases which would support the contention that a party entitled to appeal from an order entered by the circuit court should be deprived of the opportunity to seek correction of the alleged error by means of a motion timely filed in the circuit court." Heil, 71 Ill. 2d at 461-62.[3] In my view, these cases provide ample support for the tolling rule.

Additionally, the majority demands symmetry between the civil and criminal justice systems. Slip op. at 8 ("if there are any public policy implications of a trial court's inherent power to reconsider its interlocutory rulings, the implications should be the same in a civil case where a trial court has the same power"). This argument fails on its own terms. Under this reasoning, the State should be allowed to appeal an acquittal, because an unsuccessful civil plaintiff has the right to appeal an adverse result. More fundamentally, however, on the criminal side, five cases over a period of more than 30 years have expressly determined that the tolling rule applies to an appeal by the State from the interlocutory grant of a motion to suppress; on the civil side, cases have expressly stated, over a period of nearly 30 years, that a motion to reconsider an interlocutory order will not toll the time in which to bring an appeal. See Trophytime, 73 Ill. App. 3d at 335; Craine, 354 Ill. App. 3d at 1026. The civil justice system is inherently different from the criminal justice system.

---

[3]The majority further notes that I have cited cases in which the State's motion to reconsider was raised and resolved and its notice of appeal was filed, all within the 30 days provided by Rule 606(b). Slip op. at 9 n.1. The point, however, is not whether this can be done, but must it be done. With crowded court dockets, if it must be done this way then the motion to reconsider is likely problematic, and judicial efficiency will be impaired as a result of the State forgoing the trial court's error-correcting ability.

I am not troubled that, in those few situations when the State may bring an appeal, it may also avail itself of the trial court's inherent error-correction power without jeopardizing its right to bring an appeal.

My point, ultimately, is not that I am 100% correct in my reasoning and the majority is 100% wrong (although the majority seems to think along those lines), but rather it is that, where we have a well-established rule of law that has, rightly or wrongly, been engrafted onto the supreme court rules, and where the supreme court itself has expressly passed upon the public policy reasoning underlying the supreme court rule at issue, we should not be so quick to delete the rule and unsettle the law in a heretofore well-settled and uncontroversial niche, and one as important as appellate jurisdiction. After all, "appellate jurisdiction is akin to strolling through a minefield" (Physicians Insurance Exchange v. Jennings, 316 Ill. App. 3d 443, 446 (2000)), and I see no useful purpose in strewing yet more mines about. This consideration leads to my next point.

## 2. Implementation of the Tolling Rule

The principle of stare decisis further strongly supports following the holdings of Burks, Smith, Van Matre, Rimmer, McBride, Clark, Stokes, and Robins, as well as the clear expressions of public policy in Mink, Williams, and Heil. Our supreme court recently explained the principles behind stare decisis:

"The doctrine of stare decisis ' "expresses the policy of the courts to stand by precedents and not to disturb settled points." ' People v. Caballes, 221 Ill. 2d 282, 313 (2006), quoting Neff v. George, 364 Ill. 306, 308-09 (1936), overruled on other grounds by Tuthill v. Rendelman, 387 Ill. 321 (1944). In other words, ' "a question once deliberately examined and decided should be considered as settled and closed to further argument" ' (Wakulich v. Mraz, 203 Ill. 2d 223, 230 (2003), quoting Prall v. Burckhartt, 299 Ill. 19, 41

(1921)), so that the law will not change erratically, but will develop in a principled, intelligible fashion." People v. Colon, 225 Ill. 2d 125, 145-46 (2007).

Our supreme court admonished, however, that the doctrine of stare decisis should not be followed blindly and mechanically.

"If it is clear a court has made a mistake, it will not decline to correct it, even if the mistake has been reasserted and acquiesced in for many years. [Citation.] That said, this court will not depart from precedent merely because it might have decided otherwise if the question were a new one. [Citation.] As we recently reiterated, any departure from stare decisis must be ' "specially justified." ' People v. Suarez, 224 Ill. 2d 37, 50 (2007), quoting People v. Sharpe, 216 Ill. 2d 481, 520 (2005). Thus, prior decisions should not be overruled absent 'good cause' or 'compelling reasons.' Suarez, 224 Ill. 2d at 50, quoting Sharpe, 216 Ill. 2d at 520. In general, a settled rule of law that does not contravene a statute or constitutional principle should be followed unless doing so is likely to result in serious detriment prejudicial to public interests. [Citations.] Good cause to depart from stare decisis also exists when governing decisions are unworkable or badly reasoned." Colon, 225 Ill. 2d at 146.

In addition, this court has noted that "[t]he rule of stare decisis is founded upon sound principles in the administration of justice." Appelhans v. McFall, 325 Ill. App. 3d 232, 238 (2001).

Of course, one man's meat is another man's poison, and the majority can easily assert that Robins is flawed because it inexplicably imports into the criminal law a principle (and one that is later repudiated in Craine) from civil law; Stokes is poorly reasoned; and Smith relies on a case that does not stand for the principle relied upon. I have questioned this reasoning above and, obviously, I do not view it as "good cause" or providing "compelling reasons" to depart from the tolling rule

consistently set forth for the previous 30-plus years in <u>Robins</u> through <u>Burks</u>. After all, under the doctrine of <u>stare decisis</u>, in most circumstances it is more important that the rule be settled than it be settled correctly. <u>Jones</u>, 207 Ill. 2d at 134.

Instead, the majority's departure from the principles of <u>Robins</u> through <u>Burks</u>, while arguably settling the rule correctly, nevertheless unsettles a system that has been functioning for the past 30-plus years and confers no benefit upon the courts or the public other than, perhaps, an abstract and academic sense that the "plain" language of Rule 606(b) is at long last being given its plain and unambiguous meaning. (Of course, even the majority does not contend that Rule 606(b) is without ambiguity, and I offer my interpretation of the rule in part B below.) Whether or not the majority's rejection of the settled rule of law in <u>Robins</u> through <u>Burks</u> will "result in serious detriment prejudicial to public interests" (<u>Colon</u>, 225 Ill. 2d at 146), I do believe the upset and upheaval to the established procedure is both detrimental and unnecessary. See <u>Jennings</u>, 316 Ill. App. 3d at 446 ("appellate jurisdiction is akin to strolling through a minefield"). In short, the adoption of the majority rule actually causes those harms that are supposed to motivate a court to abandon precedent and I can discern precious little in the way of improvements to the procedure that will be gained from adopting the majority's new rule.

The majority shrugs off the argument in favor of observing <u>stare decisis</u> with a citation to <u>People v. DeVoss</u>, 150 Ill. App. 3d 38, 40 (1986) ("we are not compelled by a rule of horizontal, district-to-district <u>stare decisis</u> to adopt the decision of the Fourth District"). <u>DeVoss</u> does not state the doctrine of <u>stare decisis</u> and, in fact, confuses it with a hierarchical principle of the Illinois courts. Our supreme court has long maintained that there is but one appellate court in Illinois. <u>People v. Granados</u>, 172 Ill. 2d 358, 371 (1996). Justice Harrison explained that, even though the appellate court is divided into five judicial districts, the districts have nothing to do with the

appellate court's authority, but instead the five districts define the political units from which the judges of the supreme and appellate courts are selected. Aleckson v. Village of Round Lake Park, 176 Ill. 2d 82, 94 (1997) (Harrison, J., specially concurring). A circuit court, on the other hand, being inferior to both the appellate court and the supreme court, is bound by the decisions of the appellate court of the district in which the circuit court sits. Aleckson, 176 Ill. 2d at 92. The appellate courts, being coequal, are not similarly bound by the decisions of appellate courts of other districts. Aleckson, 176 Ill. 2d at 92. Thus, this principle is understood in terms of the hierarchy of the Illinois courts, with the inferior courts being bound by decisions of superior courts. Stare decisis, by contrast, is a principle that applies to a singular court or to coequal courts, under which the court will follow previous rulings. There is nothing in the definition of stare decisis that binds a court; a court is always free to ignore precedent for "good cause" or "compelling reasons," such as an unworkable decision. Colon, 225 Ill. 2d at 146.

This distinction between the hierarchical principle and stare decisis is important, because the doctrine of stare decisis lends a "should" to the inquiry of "can" used by the majority in this case. The majority demonstrates that we can change the settled interpretation of Rule 606; stare decisis causes me to ask whether we should change the settled rule. The short shrift to which the majority gives the doctrine of stare decisis is unfortunate. While I might agree with the majority that its reading of Rule 606 is more faithful to the words employed in the text of the rule than is the current tolling rule engrafted onto Rule 606 by 30 years of case law, I would adopt that reading only in the absence of those 30 years of case law. That the tolling rule has been employed continuously for 30 years is a testament to its workability and adequate functioning. Thus, my point here is that, because the tolling rule is not broken, and because it has been part of Illinois case law (despite the obvious analytical shortcomings identified by the majority) for more than 30 years, it should be followed.

See Jones, 207 Ill. 2d at 132 (under the doctrine of stare decisis, even obviously erroneous precedent should be followed if the point has been settled on a long-standing basis).

The majority responds that it is not stare decisis, but comity, that governs our adherence to other districts' decisions. This view suggests that we owe no more deference to the decisions of the First District of the Appellate Court of Illinois than we do to the decisions of the First District of the Court of Appeal of California. See Black's Law Dictionary 267 (6th ed. 1990) (judicial comity is principle by which "courts of one state or jurisdiction will give effect to the laws and judicial decisions of another"). Given our identity as one appellate court and the extent to which we routinely rely on other districts' decisions, I disagree with this view. In any event, it makes little practical difference here. If comity is what governs, then this surely is a case in which we should exercise it.

I suspect that the majority would rejoin that the tolling rule is not well settled in the Second District, because it has never been expressly considered. Or the majority might say that the lack of analysis at the inception of the tolling rule is a fatal flaw to its soundness, and that this is sufficient justification to depart from following those cases that have already decided the issue. I do not necessarily disagree. My disagreement, again, is that it is this appellate court that is making the decision. I believe that a decision to depart from a rule of law settled for more than 30 years is one that is properly within the province of our supreme court and not this court.

My interest piqued by the majority's reading of Rule 606(b), I have extensively researched to see if the cases are aberrant or whether there is a consistent pattern of implementing the tolling rule over the years since Robins and Stokes. My research has uncovered no less than 14 reported cases in which the recitation of facts makes clear that the appellate court accepted implicitly the application of the tolling rule. Interestingly, the majority of the 14 cases originate from this, the

Second District. In our defense, however, I note that in none of those cases was a jurisdictional issue regarding the timeliness of the notice of appeal raised or considered. See People v. Flores, 371 Ill. App. 3d 212 (2d Dist. 2007) (motion to quash granted on April 20; motion to reconsider timely filed within 30 days and denied on July 28; notice of appeal filed on August 5 (dates not given in reported opinion, but taken from record on appeal)); People v. Babolcsay, 368 Ill. App. 3d 712 (2d Dist. 2006) (motion to suppress granted April 27; motion to reconsider denied June 14; notice of appeal filed within 30 days thereafter); People v. Brown, 343 Ill. App. 3d 617 (2d Dist. 2003) (motion to suppress granted May 1; motion to reconsider filed June 14 and denied July 19; notice of appeal filed within 30 days thereafter); People v. Grove, 341 Ill. App. 3d 466 (5th Dist. 2003) (motion to suppress granted September 19; timely motion to reconsider denied November 14; notice of appeal field December 11); People v. Moore, 328 Ill. App. 3d 1047 (5th Dist. 2002) (motion to suppress granted March 13; timely motion to reconsider denied May 5; notice of appeal filed within 30 days thereafter); People v. Martinez, 307 Ill. App. 3d 368 (5th Dist. 1999) (motion to suppress granted November 14; timely motion to reconsider denied January 12; notice of appeal filed January 13); People v. Greene, 289 Ill. App. 3d 796 (2d Dist. 1997) (motion to suppress granted November 13; timely motion to reconsider denied January 30; notice of appeal filed within 30 days thereafter); People v. Blakely, 278 Ill. App. 3d 704 (2d Dist. 1996) (motion to suppress granted August 9; timely motion to reconsider denied October 30; notice of appeal filed within 30 days thereafter); People v. Pickens, 275 Ill. App. 3d 108 (5th Dist. 1995) (motion to suppress granted October 27; timely motion to reconsider denied February 4; notice of appeal filed within 30 days thereafter); People v. Hieber, 258 Ill. App. 3d 144 (2d Dist. 1994) (motion to suppress granted June 24; timely motion to reconsider denied August 10; notice of appeal filed within 30 days thereafter); People v. Smith, 248 Ill. App. 3d 351 (2d Dist. 1993) (motion to suppress granted September 13; timely motion to

reconsider denied December 10; notice of appeal filed within 30 days thereafter); People v. Jose, 241 Ill. App. 3d 104 (5th Dist. 1993) (motion to suppress granted September 6; motion to reconsider filed October 2 and denied October 29; notice of appeal filed within 30 days thereafter); People v. Kelk, 231 Ill. App. 3d 797 (4th Dist. 1992) (motion to suppress granted March 23; timely motion to reconsider denied May 16; notice of appeal filed within 30 days thereafter); People v. Duncan, 104 Ill. App. 3d 701 (1st Dist. 1982) (motion to suppress granted February 13; timely motion to reconsider denied March 12; notice of appeal filed after April 9). This list of cases, in which, under the majority's rule, the appellate court lacked jurisdiction, does not include Burks, Rimmer, or Stokes, all of which held that a timely motion to reconsider will toll the time for appeal. In addition to the 14 reported cases in which the recitation of facts proves a lack of jurisdiction under the majority's rule, I uncovered another 59 reported cases in which the trial court granted a motion to suppress, the State's motion to reconsider was denied, and the notice of appeal was deemed to be timely. These cases did not raise or consider jurisdiction, but the recitation of facts did not specify the time frame. They extend from 1978 through 2007. Of course, I do not and cannot say that they run afoul of the majority's rule, but I think that a significant portion of them probably do.

In the interest of fairness, I note that my research uncovered four cases in which the suppression, reconsideration, and notice of appeal were all accomplished within 30 days, thus presenting no issue under the majority's rule: People v. Gott, 346 Ill. App. 3d 236 (5th Dist. 2003); People v. Evans, 314 Ill. App. 3d 985 (2d Dist. 2000); People v. DeBlieck, 181 Ill. App. 3d 600 (2d Dist.1989); People v. Zeigler, 106 Ill. App. 3d 783 (2d Dist. 1982).

My point in the extensive citations is to illustrate that the Stokes rule, a timely motion to reconsider will toll the time in which to appeal, is both long standing and almost instinctively internalized within the law and its practitioners. To be fair, however, none of the cases cited above

(slip op. at 34-35), and particularly the Second District cases, explicitly raised the issue we are addressing in this case. Yet it is instructive that, despite each court's obligation to verify its jurisdiction in every case (People v. Smith, No. 104468, slip op. at 7 (February 22, 2008)), none thought jurisdiction was lacking and, instead, they followed implicitly the express holding of the Robins-Stokes line of cases. I can see no useful purpose to be accomplished by disturbing the tolling rule. Moreover, the adoption of the majority's new rule would tremendously impact the law of suppression and arrest, ensuring that erroneous decisions favoring defendants would go uncorrected while erroneous decisions favoring the State would continue to be corrected. This imbalance can bode only ill for the law in general. In my view, the considerations of stare decisis weigh in favor of continuing to adhere to the holdings of Robins and Stokes through Burks and strongly against repudiating the tolling rule.

I make one last point under the topic of stare decisis: the majority, in responding to the acquiescence argument that I develop in section B below, noted that our supreme court dispensed with a 16-year-old rule despite the fact that the acquiescence principle would have justified its continued adherence. Slip op. at 13-14. This passage in the majority deftly illustrates my overriding point that it is our supreme court who should decide whether to follow or reject the tolling rule, not the inferior courts.

## B. Construction

My final area of disagreement with the majority is with its construction of Rule 606(b). The majority correctly notes that it is fundamental that the supreme court rules are interpreted in the same manner as statutes. 134 Ill. 2d R. 2; People v. King, 349 Ill. App. 3d 877, 878 (2004). The majority acknowledges this, as well as the primary goal of construing a statute or supreme court rule, which is to ascertain and give effect to the drafters' intent in enacting the statute or supreme court

rule. <u>King</u>, 349 Ill. App. 3d at 878. The best indication of the drafters' intent is the language of the rule, given its plain and ordinary meaning. <u>King</u>, 349 Ill. App. 3d at 878. Where the language of a rule is clear and unambiguous, it must be given its plain and ordinary meaning without resort to other tools and aids of construction. <u>In re Marriage of Bates</u>, 212 Ill. 2d 489, 512 (2004). In other words, the maxims of construction are aids to be employed only where the language of the rule is found to be ambiguous in some way. <u>Land v. Board of Education of the City of Chicago</u>, 202 Ill. 2d 414, 426 (2002). Here, the majority fails to recognize this follow-on and does not expressly make the determination that the language of Rule 606(b) is ambiguous. While seemingly maintaining that the rule is unambiguous and that its construction of the rule is inevitable, the majority employs the principle of construction that a more specific provision trumps a more general provision to resolve the ambiguity of conflicting results that the majority admits is a possibility if the "plain" language is given its effect. Slip op. at 9-11. Thus, the majority finds that Rule 606(b) is ambiguous and employs tools of construction to resolve the ambiguity.

Accepting for purposes of argument that the rule is ambiguous, I propose a different principle of construction, namely the principle of acquiescence. I realize that it is a weak reed on which to base a determination of the drafters' intent, but, here, it is appropriate. Rule 606 has been amended nine times since 1970. As of July 1, 1971, Rule 606(b) was amended to state:

> "The notice of appeal shall be filed within 30 days from the entry of the order or judgment from which the appeal is taken ***. *** [N]o appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." 50 Ill. 2d R. 606(b).

Interestingly, the first sentence refers to an "order" or a "judgment." The 30-day limitation likewise refers to the "order" or the "judgment."

Rule 606 was next amended effective July 1, 1975, but no changes were made to Rule 606(b). 58 Ill. 2d R. 606(b). Robins was issued in 1975 and interpreted Rule 606(b) to allow a motion to reconsider an interlocutory judgment to toll the time to appeal. Effective February 17, 1977, Rule 606 was again amended, with Rule 606(b) taking more substantially the form in which it exists today:

"Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion. *** [N]o appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." 65 Ill. 2d R. 606(b).

The evolution of Rule 606(b) demonstrates that the "order or judgment" language has been removed in the first sentence, replaced by the same language used today, "final judgment." The final sentence continues to use the "order or judgment" language, as it does today. This suggests that it is perhaps an inadvertent holdover from the older versions of the rule that has not been harmonized with the terminology of the rule as it developed. In May 1977, Stokes was issued, relying on Robins, and holding that a motion to reconsider an interlocutory judgment will toll the 30-day time in which to bring an appeal. In 1978, in Heil, 71 Ill. 2d at 461, the supreme court endorsed the idea of allowing a trial court to reconsider its interlocutory judgments. In so ruling, the supreme court expressly considered Rule 606(b). Heil, 71 Ill. 2d at 461.

Rule 606 was next amended effective October 15, 1979. 73 Ill. 2d R. 606. The amendment did not affect Rule 606(b) at all. Clark was issued in December 1979, holding that a motion to reconsider tolls the time to appeal. Clark, 80 Ill. App. 3d at 48-49.

In 1983, McBride was issued. Effective July 1, 1984, Rule 606 was again amended, but the amendment did not affect Rule 606(b). 107 Ill. 2d R. 606(b). For the next 15 years, the rule remained unchanged. During that time, Rimmer, Van Matre, Williams, Mink, and Smith were issued. All these cases expressed agreement with the idea that a timely motion to reconsider will toll the time to appeal.

Effective December 1, 1999, Rule 606(b) was amended to take its current form. 188 Ill. 2d R. 606(b); see also 210 Ill. 2d 606(b). In February 2005, Burks was issued, holding that a timely motion to reconsider tolls the time for appeal. Burks, 355 Ill. App. 3d at 754. Two subsequent amendments to Rule 606 left Rule 606(b) unchanged. Official Reports Advance Sheet No. 2 (January 18, 2006), R. 606(b), eff. December 13, 2005; Official Reports Advance Sheet No. 17 (August 16, 2006), R. 606(b), eff. September 1, 2006.

Based on this recitation, it is clear that the tolling rule has been uniformly used (even endorsed by the supreme court in Mink, Williams, and Heil). From time to time, the supreme court has amended Rule 606(b), but never in such a way as to disapprove of the judicial interpretations holding that a timely motion to reconsider will toll the time for appeal. Further, after each amendment of Rule 606(b), additional cases reiterated the tolling rule. Based on this history, then, I would apply the doctrine of acquiescence to Rule 606(b) and follow the tolling rule consistently iterated in Robins through Burks. See, e.g., People v. Downs, 371 Ill. App. 3d 1187, 1191 (2007) (where judicial interpretation of statute has not provoked an amendment, drafters are presumed to acquiesce in the judicial exposition of the intent behind the statute or the rule). Obviously, the supreme court has had ample opportunity (from amending its rules to deciding the State's appeals on motions to suppress) to correct any misinterpretation of Rule 606(b). It has not yet done so.

The majority is unimpressed with the principle of acquiescence. Nevertheless, by juxtaposing the dates by which the supreme court rule had been modified with the cases expressing the tolling rule, and the supreme court cases endorsing the policy and reasoning behind the tolling rule, I have demonstrated that the issue could be settled under the acquiescence principle. That, of course, does not mean the principle is not without problems in the context of applying it to the supreme court rules. Neither I nor the majority have found any case applying this principle to the supreme court rules. This suggests to me either that it should not be applied or that nobody else has attempted it. The majority clearly points out the weakness of reliance upon this principle alone. However, the principle of acquiescence along with the principle of stare decisis and the authority identified above provide significant reasons to continue to adhere to the tolling rule.

In addition to the principles of acquiescence and stare decisis, other principles of construction further militate in favor of continued observance of the tolling rule. This court has stated that, in construing an ambiguous supreme court rule, "the court may look beyond the language to consider the rule's purpose." People v. King, 349 Ill. App. 3d 877, 878 (2004). In so doing, the court is to ascertain the drafters' intent "from a consideration of the entire scheme, its nature, its object, and the consequences resulting from different construction[]." King, 349 Ill. App. 3d at 878-79. The scheme, nature, and object of Rule 606(b) has been explored above. I now pause to consider the consequences of the varying constructions proposed here.

Under the majority's construction, any State appeal from the grant of a defendant's motion to quash arrest and suppress evidence must be perfected within 30 days, and all collateral activities, like a motion to reconsider, must be completed before that time as well. Under the heretofore unbrokenly applied tolling rule, a motion to reconsider will toll the time for appeal until it is ruled upon; then the 30-day clock commences for the State to file a notice of appeal. In a vacuum, neither

construction stands out as significantly better. The tolling rule advances the policy of allowing the trial court to exercise its inherent error-correcting power and thus enhances judicial economy by potentially weeding out from appeal those cases in which the trial court realizes an error. The majority's construction works to promptly resolve criminal matters and to ease the inherent uncertainty that the tolling rule would impose upon a defendant. We do not operate in a vacuum, however. The weight of the 30-odd years in which the tolling rule has been applied has created settled expectations among the practitioners before our courts. Changing the rule will inevitably upset those expectations.

It has been held that a court has the inherent authority to determine whether a decision is to be given only prospective application. Aleckson, 176 Ill. 2d at 91; Larrance v. Human Rights Comm'n, 166 Ill. App. 3d 224, 230 (1988). The circumstances in which a court should exercise this power are generally limited to instances where the "decision is a clear break with the past, such as when a court explicitly overrules its own past precedent, disapproves a practice that it has previously approved, or overturns a well-established body of *** court authority." Larrance, 166 Ill. App. 3d at 230. In order to determine whether a decision should be applied only prospectively, the court should consider three factors: (1) whether the decision has established a new principle of law through overruling a clear precedent or deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retrospective application of the decision will further or retard its operation, in light of the merits and demerits of the rule and its history, purpose, and effect; and (3) whether retrospective application of the decision will cause substantial inequitable results. Aleckson, 176 Ill. 2d at 92-93.

Considering the factors leads to the conclusion that this is a case for only prospective application. First, it declares a new rule. Whether the majority wishes to characterize its decision

-40-

as resolving an issue of first impression, or as the changing of settled precedent, there is absolutely no question that the majority's rule was never foreshadowed, either in Illinois case law as a whole or in Second District jurisprudence particularly. I think the balance on the second factor is in equipoise. As to the final factor, the rule will cause substantial inequity to those practitioners who have relied upon the 30-year-old landscape in preparing (and becoming locked into) their litigation strategies. This rule change was unheralded and impossible to predict. Thus, the third factor also weighs heavily in favor of only prospective application. I therefore urge my colleagues to declare that this case will have only prospective application. By prospective application, I mean to apply the rule such that only those parties who can still conform their conduct to the rule will be affected; those who have already acted in reliance on the tolling rule should, in fairness, remain unaffected by the rule. I also note that there are many ways to craft a prospective application of the majority's rule. See Brown v. Jaimovich, 365 Ill. App. 3d 329, 338 (2006) (citing examples such as decision " 'will apply prospectively to causes of action arising out of occurrences' [citation]" on a date certain, or decision will apply to all cases " 'in which trial commences on or after' [citation]" the issuance of the mandate, and so on).

The majority argues that Aleckson should not be extended to a case involving jurisdiction. In Aleckson, though, the jurisdictional bar of compliance with the Administrative Review Law was held to be properly deferrable through only prospective application of the new rule. I fail to see any substantial difference between the situation in Aleckson and here. Moreover, under the old rule, we had jurisdiction to reach the issue and it is only the majority's newly fashioned reading that divests jurisdiction. See, e.g., Burks, 354 Ill. App. 3d at 754 (expressly employing tolling rule); Babolcsay, 368 Ill. App. 3d 712 (impliedly following tolling rule); Brown, 343 Ill. App. 3d 617 (impliedly following tolling rule). I do not find it troublesome to limit the chaos caused by the new rule by

adhering to the old rule until a date certain. Last, the majority appears to insinuate that I object to application of its new rule in this case. I do not. I recognize that this case must be governed by the majority's new rule. In advocating only prospective application, however, I seek to limit the chaos under this new rule by allowing it to be implemented only where the parties may conform their conduct to the new rule, rather than penalizing parties for their reliance on the previously established and utilized rule.

I observe, additionally, an unlooked-for consequence to the majority's construction. This case, in the scheme of things, is fairly insignificant. It thankfully involves no injuries or deaths or loss of tremendously valuable property. But what if it did? I note that the infamous Brown's Chicken Massacre case involved a similar procedural posture to this one. There, the defendant prevailed on a motion to suppress evidence, namely, his videotaped statement. The State appealed, arguing that its prosecution of the defendant would be substantially impaired without the videotaped evidence. On consideration of the merits, the appellate court reversed the decision of the trial court and reinstated the videotaped statement into evidence. People v. Degorski, No. 1--07--2784 (March 31, 2008). The case does not indicate whether the State filed a motion to reconsider in the trial court or, if so, how quickly it was resolved. However, for the sake of argument, assume that the State had filed a motion to reconsider, which, due to the trial court's heavy docket, was not resolved until after 30 days had passed. Assume further that the trial court denied the motion to reconsider. (However, as seen by the appellate court's judgment, this denial of the motion to reconsider was erroneous.) Under the majority's construction, the defendant receives a windfall, because the State cannot get the error corrected, precisely because it offered the trial court the opportunity to correct it. Further, the development of the law is stymied--the appellate court does not issue the decision and the trial court will become convinced that its (erroneous) holding is correct and it may issue similar decisions

in the future. Last, and of enormous importance, the State may not be able to maintain its prosecution, and the defendant would wrongfully go free without having to stand trial. I cannot see how justice is served in this scenario.

Looking to the broader picture, the majority has not, apparently, considered the effect of its holding. Under the majority's rule, we do not have jurisdiction to hear this appeal. What about the dozens of cases identified above (and perhaps hundreds of unreported cases) that have been decided in accordance with the tolling rule? If the appellate court had no jurisdiction, then its order is void. This results in several classes for which the majority should make some sort of provision. In the first class, the appellate court will have affirmed the trial court's order. This should result in no effect, because the challenged evidence properly remained suppressed, and the outcome of a trial, if any, was based on a case presented without the objectionable evidence. In the second class, the appellate court reversed the trial court's order suppressing evidence. However, the order was void, because the tolling rule did not extend the time for appeal. This leads to several subclasses: those defendants who may still timely file petitions for rehearing, those who may still file postconviction petitions, and those whose direct and collateral appeals are concluded. The question of a void judgment can be raised at any time; further, the void judgment will have resulted in a conviction. I imagine that, in each case, the defendant would be entitled to a new trial. However, from an institutional perspective, we have already gotten it right--the evidence was supposed to come before the finder of fact. The new trial, resulting from the void appellate judgment, will be fundamentally flawed, because the suppressed evidence was erroneously suppressed and should be presented to the finder of fact. This certainly does not seem to be a desirable result, even as it appears to be an inevitable one.

Even if the application of the rule is announced to be only prospective, I am hard-pressed to see a way out of the morass that the new rule will cause--those defendants who have undergone a trial as a result of a now-void appellate judgment would seem to have a pretty good argument for a new trial, even if we tried to make the rule prospective only. Of course, if the rule operates retrospectively, then we must squarely face this consequence.

These consequences resulting from the varying constructions of Rule 606(b), in my view, favor keeping the tolling rule. As the consequences resulting from the competing constructions are a valid consideration in judging the merits of the competing constructions (King, 349 Ill. App. 3d at 878-79), I believe that they strongly weigh in favor of the tolling rule, along with the principles of acquiescence and stare decisis. Thus, while I recognize that I am not prevailing on the merits of the issue (or the prospectivity or retrospectivity of the application of the rule), I believe the majority should have considered and accounted for these consequences in its decision.

The majority's interpretation of the language of Rule 606(b) is not foreclosed to challenge. It is arguable, as the State suggests, that "final judgment" refers to final judgments, while the use of the unmodified word "judgment" refers to both final and interlocutory judgments. In subsequent sentences, "judgment" is modified to make the understanding explicit that it is a final judgment (e.g., "When a timely posttrial or postsentencing motion directed against the judgment has been filed" (210 Ill. 2d R. 606(b) (sentence 2))). The first sentence, by contrast, states that "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." 210 Ill. 2d R. 606(b) (sentence 1). The juxtaposition of "final judgment" and the unmodified "judgment" can be reasonably construed to state the general rule that a notice of appeal must be filed within 30 days of the final judgment, or within 30 days after

the ruling on a timely motion to reconsider directed against any appealable judgment, final or interlocutory. The "or if" clause, then, expressly allows and validates the holdings in <u>Robins</u> through <u>Burks</u>. The "order or judgment" language in the penultimate sentence is reconciled by noting that "order" can refer to the denial of the motion to reconsider, and thus it harmonizes with the first sentence.

The majority reads the foregoing to require a motion to reconsider before a notice of appeal can be filed. Not so. The penultimate sentence states that "no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." 210 Ill. 2d R. 606(b) (sentence 7). This language allows for the possibility of filing a notice of appeal from an interlocutory order or judgment within the 30-day time limit. The alternative interpretation of the first sentence allows for the tolling rule to apply.

If this construction is adopted, then there is no need to resort to the tools and aids of construction--instead, the plain language of Rule 606(b) is no longer ambiguous and it is given its ordinary (and heretofore universally accepted) effect.

In summary, for over three decades, the courts in Illinois have uniformly held that a State's motion to reconsider the trial court's grant of a defendant's motion to suppress will toll the time for appeal. This uniformity extends so far as to accepting without challenge the tolling rule in a significant number of cases, many of which are from the Second District. I have further undertaken an examination of the cases and found them to be based on the principle that the trial court should have the opportunity to correct its errors, thereby eliminating needless appeals. This principle is repeatedly expressed throughout all facets of the law and I believe it justifies our continued adherence. In addition, the principle of <u>stare decisis</u> suggests that the majority's rule will actually cause the problems that a departure from precedent is supposed to remedy. Moreover, <u>stare decisis</u>

suggests that it is better to keep a less-than-analytically-perfect rule if the rule is long standing and working; the long use of the tolling rule demonstrates both that it works and that it is quite long standing. The principle of <u>stare decisis</u>, then, strongly supports our continued adherence to the tolling rule. Also, Rule 606(b) may be interpreted in a manner that renders it unambiguous, contrary to the majority's implicit holding. While the majority presents plenty of insightful analysis regarding the proper interpretation of Rule 606(b), as if it were a matter of first impression, I have presented sufficient reasoning to defer usurping the decision from its proper maker, our supreme court. For these reasons, I respectfully dissent.